## MOTT *vs.* PALMER.

The covenant of seisin is broken if the grantor at the time of the conveyance do not own such things affixed to the freehold as would pass to the grantee by a conveyance of the land itself.

Accordingly where the grantor covenanted in the conveyance that he was the lawful owner of the premises and seised of a good and indefeasible inheritance therein, and a quantity of rails erected into fence standing on the premises was the property of another person by virtue of a previous agreement made with the grantor; *held*, that the grantee might maintain an action against the grantor for a breach of the covenant of seisin.

It seems that rails built into fence by a tenant, under an agreement that he may remove them from the land, are, as between such tenant and the owner of the soil, personal property.

PALMER brought an action of covenant against Mott in the common pleas of Columbia county, in which court the cause was tried in October, 1846. The case was this: On the 25th of December, 1841, the defendant conveyed to the plaintiff certain premises situated in Chatham, Columbia county, covenanting in the conveyance that at the delivery thereof he was the *lawful owner of the premises granted, and seised of a good and indefeasible estate of inheritance therein clear of all incumbrance.* A quantity of rails erected into a fence which stood on the premises at the time the deed was executed was not in fact the property of the grantor, but belonged to one Brown, the owner of adjoining lands. Brown had cut the rails from his own land and built the fence in 1840, under an agreement with the defendant by which he was to enclose temporarily a part of the defendant's land and occupy it as tenant, *with leave to remove the rails whenever he saw fit to do so.* Under this agreement Brown occupied that part of the land in the season of 1841, and it was enclosed by the fence in question when the above deed was executed. The plaintiff, after his purchase

Mott v. Palmer.

the premises, went into possession, and in the year following took the rails and converted them to his own use, and for this he was sued by Brown in a justice's court, and judgment recovered against him for the value of the rails. The defendant Mott was present on the trial of that suit and was sworn as a witness. It was claimed on the part of the plaintiff that these facts constituted a breach of the covenant of seisin, inasmuch as the fence in question was at the time the conveyance was executed the personal property of Brown. The defendant's counsel requested the court to charge the jury, that if the fence was the personal property of Brown at the date of the deed, the plaintiff could not recover for a breach of the covenant of seisin. but that his remedy would be an action on the case. The court refused so to charge, and instructed the jury that if they found the facts to be as they are above stated, the plaintiff was entitled to recover the value of the rails. The defendant excepted. The jury found a verdict for the plaintiff, on which judgment was rendered. The supreme court sitting in the third district affirmed the judgment, and the plaintiff brought error to this court.

*N. Hill, Jun.* for the plaintiff in error. To entitle the plaintiff below to recover, it must be shown that there was, at the time of giving the deed, an outstanding estate in some third person of freehold at least, so as to interfere with the grantor's power of conveying and transmitting by descent. (4 *Kent's Com.* 386, 7; 1 *Hill. Abr.* 104, *note;* 2 *Wend.* 166.) It cannot be pretended that Brown had such an estate. His right was that of a tenant for a short period, with the privilege of taking away, when he left, the rails he had placed upon the land to enable him to use it. Neither this outstanding tenancy, nor any of the incidental privileges connected with it, interfered with the *estate* of the grantor, so as to divest his seisin.

The action is unprecedented and anomalous. No trace of any thing like it can be found in the books. It proceeds upon a course of reasoning which finds no countenance in the cases hitherto decided. The declaration itself is necessarily incongruous and absurd. It admits that the grantor was properly

seised of the land described in the deed, and then asserts that the rails in question were *part and parcel of and attached to the soil and freehold.* If this allegation is true, the plaintiff below acquired a valid title to the rails; and his right of recovery, therefore, must be established, not by *proving* what he has thus far alleged, but by *disproving* it. The declaration, however, alleges further, that the grantor, though duly seised of the soil and freehold, was *not seised of an indefeasible estate of inheritance in the rails,* and then proceeds to show that they were the *personal property of Brown*—a species of property which the deed does not purport to convey.

It is not true that the covenant of seisin extends to every thing which would pass under the deed as between vendor and vendee where no right of a third person intervenes. As between vendor and vendee, a deed like the one in question purports to transfer not only the unqualified property in the soil, but the exclusive right of using it. And yet it is settled that a public highway over the land, which implies an outstanding right to cut down trees, dig up the soil, and exclude the grantee from the beneficial enjoyment of it, is no breach of the covenant of seisin. (15 *John. Rep.* 481.) Outstanding rights of this nature, as the right to pasture cattle on the land, (5 *Conn. Rep.* 508,) to take water from it, (15 *Pick.* 66, 68,) to dig turf, &c. upon it, (5 *Conn.* 508, 9,) are within the covenant against *incumbrances,* but are not reached by the covenant of *seisin.* (*See* 1 *Hill. Abr.* 394; 2 *Mass. Rep.* 97; 3 *New Hamp. Rep.* 335; 10 *Conn.* 422; 19 *Maine Rep.* 313.) So as to every thing constituting a burthen upon the estate, and affecting its value, without changing its essential character; as an outstanding right to have dower in the land, (22 *Pick.* 447, 8; 10 *John. Rep.* 266,) or to occupy it as tenant for years. (2 *Speer's Rep.* 649.)

It may be said that if this action is not maintainable, purchasers may be misled and defrauded, without the means of redress. If this were so, it would not furnish an adequate reason for extending the covenant of seisin beyond its appropriate limits. Upon the principle of the cases above cited, the covenant against

Mott v. Palmer.

incumbrances seems. to be the only one applicable to an outstanding right to enter and remove rails or other things from the land. But conceding that no remedy exists upon the covenants in the deed, this does not prove that the purchaser would be remediless. If he has been misled through mistake or fraud, a court of equity would set aside the transaction and compel a restoration of the purchase money. (2 *Paige*, 84, 91, 2; *Story's Eq.* § 140 *et seq.*) And in cases of fraud, even a court of law would furnish adequate redress in an action on the case for damages. (1 *Day*, 250; 2 *Cain. Rep.* 193; 2 *Bibb's Rep.* 583; 13 *Johns. Rep.* 325; 5 *Day's Rep.* 439; 6 *Shepl.* 419, 424; 23 *Wend.* 260; 17 *id.* 193; *Georgia Rep. part* 2, *p.* 112.)

*J. H. Reynolds*, for the defendant in error. The rails being made into fence, on the premises covered by the deed, were as between Mott and Palmer a part of the realty, and would have passed by the deed had Mott owned them. (*Goodrich* v. *Jones*, 2 *Hill*, 142; 2 *Wooddeson's Lec.* 379; 2 *Kent's Com.* 346, *n.*; *Walker* v. *Sherman*, 20 *Wend.* 639; *Middlebrook* v. *Corwin*, 15 *id.* 169.) And Mott having assumed by the deed to convey them as real estate, is estopped from denying that they were a part of the realty as between him and his vendee. (*McCarty* v. *Leggett*, 3 *Hill*, 134; *Abbott* v. *Allen*, 14 *John.* 248; *Greenly* v. *Wilcox*, 2 *id.* 1; *Hamilton* v. *Wilson*, 4 *id.* 72; *Sinclair* v. *Jackson*, 8 *Cowen*, 553; *Jackson* v. *Bull*, 1 *John. Cas.* 90; *Jackson* v. *Stevens*, 16 *John.* 110; *Dezell* v. *Odell*, 3 *Hill*, 215; 2 *Atk.* 228, 383, 558.) There being no reservation in the deed, of the fence in question, every thing appurtenant to the soil *prima facie* passed by the deed as between Mott and Palmer. It was as between them treated as real estate, and the rails or fence in question would have passed had Mott owned them. Mott covenanted that he owned *the premises and every part thereof*. These rails made into fence were a part thereof, as between grantor and grantee, and the covenant of seisin operated as much upon them as upon the soil itself. (*Austin* v. *Sawyer*, 9 *Cowen*, 39; *Holmes* v. *Tremper*, 20 *John.* 30; *Miller* v. *Plumb*, 6 *Cowen*, 665; *McClintock* v. *Graham*, 3 *Mc-*

Mott v. Palmer.

*Cord,* 553 ; *Fairis* v. *Walker,* 1 *Bailey,* 540 ; *Isham* v. *Morgan,* 9 *Conn. R.* 374 ; 2 *Kent's Com.* 342.) If Mott had covenanted in express terms that he owned the particular fence in question, there could be no doubt that an action for the breach of that covenant could have been maintained if the title had failed. By the deed from Mott to Palmer the fence in question was as much embraced in it and as much a part of the premises conveyed as if it had been conveyed in express terms ; for there being no reservation in the deed, every thing appurtenant to the premises was covered by the deed as between vendor and vendee. (*Platt on Cov.* 306 ; 11 *East,* 642 ; *Holmes* v. *Tremper,* 20 *John.* 30 ; *Isham* v. *Morgan,* 9 *Conn.* 374 ; *Kittredge* v. *Woods,* 3 *N. Hamp. R.* 503 ; *Parsons* v. *Camp,* 11 *Conn.* 525 ; 5 *Greenl.* 222 ; 15 *Wend.* 169 ; 21 *Pick.* 367.)

The defence set up by the defendant and the evidence offered to sustain it was in its effect an effort to vary by parol the legal import of the deed ; to restrict its terms so that it should not operate upon what in fact and in judgment of law was a part of the premises described in the conveyance. The covenant operated upon every thing which would have passed by the deed if Mott had been the owner. The effort therefore to show that the fence was mere personal estate, and that in consequence of its being personal estate was not covered by the deed or embraced in the covenants, was in effect contradicting its terms, and limiting and restricting its legal effect by parol, and was therefore inadmissible. (*Austin* v. *Sawyer, supra ; Isham* v. *Morgan,* 9 *Conn.* 374 ; *Suydam* v. *Jones,* 10 *Wend.* 180 ; *Stevens* v. *Cooper,* 1 *John. Ch.* 429 ; *Champion* v. *Storrs and White,* 5 *Cowen,* 509 ; *Jackson* v. *Croy,* 12 *John. R.* 427 ; *Child* v. *Wells,* 13 *Pick.* 121.)

RUGGLES, J. In December, 1841, Mott conveyed to Palmer a farm of land in Columbia county, by a deed containing the following covenant :

" And the said Philander Mott doth hereby covenant and agree that at the delivery hereof he is the lawful owner of the

premises above granted, and seized of a good and indefeasible estate of inheritance therein clear of all incumbrance."

This action was brought by Palmer, the grantee, on the cov enant in the deed, to recover the value of a rail fence which stood on the land when the deed was executed, but which did not belong to Mott the grantor. The facts were, that the fence was erected on Mott's land in 1840 by one Brown, (who owned the adjoining land,) under an agreement between him and Mott, by which Brown was to fence in, temporarily, a part of Mott's land with his own, and to cut and take away the grass growing on Mott's land; with leave to take away the fence whenever he liked. After Mott conveyed to Palmer the land on which the fence stood, Palmer removed the fence and converted it to his own use. Brown thereupon sued him before a justice for the fence and recovered, Mott being a witness on that trial against Palmer. Although the evidence to prove these facts was at first offered by Palmer on the trial of this cause in the court below and rejected by the court, it was afterwards given by the defendant Mott.

The question now is whether in this action brought by Palmer the grantee against Mott his grantor, on the covenant of ownership and seisin in the deed, Palmer is entitled to recover the value of the fence. A grantor who executes a conveyance of land undertakes to convey every thing described in his deed; and by a covenant of seisin he assumes to be the owner of all he undertakes to convey. The deed in question purported to "grant and convey all that certain lot or farm of land situate in the town of Chatham, county of Columbia, bounded &c. with the appurtenances," &c. The word land, when used in a deed, includes not only the naked earth, but every thing within it, and the buildings, trees, fixtures and fences upon it. (*Goodrich* v. *Jones,* 2 *Hill,* 143; *Walker* v. *Sherman,* 20 *Wend.* 639, 640, 646; *Green* v. *Armstrong,* 1 *Denio,* 554; *Com. Dig. Grant, E.; Co. Litt.* 4 *a; 2 Roll.* 265.) A deed passes all the incidents to the land as well as the land itself, and as well when they are not expressed as when they are. Fixtures belonging to the owner of the land, being part of the

land, cannot be reserved by parol when the land is conveyed; the deed conveys them to the grantee unless the reservation be in writing. (*Noble* v. *Bosworth,* 19 *Pick.* 314.) If the fence had belonged to Mott, it would have passed by his deed; not by force of the word *appurtenances* contained in the deed, but without that word, and as part of the land. Trees, buildings, fixtures, and fences on a farm, are corporeal in their nature, and the subjects of seisin, like the land itself of which they are regarded in the law as a part. Fences are perishable by the effect of time, and so are trees and houses; but indestructibility is not one of the essential attributes of real estate. Fences are not only indispensable to the enjoyment of real estate, but they are, in their nature, real estate, to the same extent that houses and other structures on the land are so. A rail, before it is used in the construction of a fence, is personal property, and so is a loose timber before it is used in the construction of a house. When either is applied to its appropriate use in building a fence or a house, its legal nature is changed. It becomes real estate, and is governed by the law which regulates land, descending to the heir as part of the inheritance, and passing by a deed as part of the freehold. A fence may be easily detached from the earth, but not more easily than the stones which lie on its surface, and both are part of the land, and therefore it is that a building or fence belonging to the owner of the land will pass by his deed of the land without being expressed or designated as part of the thing granted.

But the earth within specified boundary lines may be owned by one man, and the buildings, trees and fences standing on it by another. A man may have an inheritance in an upper chamber, although the title to the lower buildings and soil be in another. (*Shep. Touch.* 206; 1 *Inst.* 48, *b.*) And it is a corporeal inheritance. (10 *Vin.* 202.) Buildings and fixtures erected by a tenant for the purposes of trade belong to him, and are removable without the consent of his landlord. (*Holmes* v. *Tremper,* 20 *John.* 30; *Miller* v. *Plumb,* 6 *Cowen,* 665; *Doty* v. *Gorham,* 5 *Pick.* 489.) *Herlakenden's case,* (4 *Co. R.* 63,) affords an instance in which one man owned the land

and another the growing trees upon it. In *Rogers* v. *Woodbury*, (15 *Pick*. 156,) Putnam, J., in speaking of a house which a man had erected on land which did not belong to him, said "it might or it might not be parcel of the realty. If the owner of the land owned the buildings, it would be so. If he did not, and the owner of the building had no interest in the land, the building would be personal property." *Smith* v. *Benson*, (1 *Hill*, 176,) was the case of a dwelling house and grocery belonging to one man, although standing on the land of another; and in *Russell* v. *Richards*, (1 *Fairf*. 431,) the owner of land on which another man had erected a saw mill by his consent, executed a deed for the land and the mill, but it was held that the conveyance passed no title to the mill, because it was the property of him who built it. The conclusion derived from these cases against the plaintiff's right of recovery on the covenant is, that the defendant's deed purports to be a grant of real estate only, and the fence in question being personal property was not a part of the premises granted, and therefore not within the scope of the covenant which relates to the realty only.

If this be a sound conclusion, a grantor could not be made liable on the covenants in his deed, although he had previously and privately sold, with a view to removal, all the houses, buildings, mills, fences, and growing timber on the land conveyed. Indeed, if this doctrine prevails, the gravel, clay, stone and loam, might also be converted into personal property by such a sale, and carried off the land; without violating the grantor's covenant. Let us test the correctness of this conclusion in a few words. It is true the fence in one sense was not a part of the thing granted. It did not pass by the deed. In the same sense, if some stranger had been the owner of one half the farm, that half would not have been part of the thing granted, because it would not have passed by the deed. But the fence was *within the description* of the thing granted as clearly as the land itself; and being within the description, it was a part of that which the deed purported to convey, and of which the grantor covenanted that he was the owner. If it be yet doubted whether the fence (being in fact the personal property of Brown) was

within the description of what the grantor professed to convey, that doubt can be solved in a moment, by reflecting that it would undeniably have passed by the deed if the grantor had been the owner of it; although it could not have so passed if it had not been within the description.

It all comes to this: The grantor undertook to convey it as part of the realty by a deed which would have been effectual for that purpose if he had been the owner of it, as by the deed he professed to be, but was not. It is therefore a case in which the covenant of seisin affords a remedy; and although the amount in controversy is trifling, the right is clear; and it seems to be perfectly just that the grantor should pay for the fence, because there is nothing in the case to show that Palmer, when he accepted the deed, was informed by Mott or otherwise knew that it belonged to Brown.

The judgment of the supreme court must therefore be affirmed.

BRONSON, J. The fence in question stood on the land which the defendant conveyed to the plaintiff; and, as between vendor and vendee, was a part of the thing granted. (*Goodrich* v. *Jones*, 2 *Hill*, 142; *Thayer* v. *Wright*, 4 *Denio*, 180; *Green* v. *Armstrong*, 1 *id.* 554.) There is no more doubt of this, than there is that the trees, herbage and buildings on the land, or the mines and quarries in it, passed by the deed.

It is undoubtedly true that the soil may be owned by one man, and the fences and buildings by another; and as between such owners, those structures will be regarded as personal property. But in their nature, fences and buildings, like every thing else attached to the earth, are real estate, and will pass with the soil to the heir or grantee. It is truly said that rails are not in their nature real property. But a fence, though constructed of rails, is in its nature real property. It is just as plainly so as is a house. Both are made of materials which were once personal property; but they become real when formed into a structure attached to the soil. The word land includes not only the soil, but every thing attached to it,

Mott *v.* Palmer.

whether attached by the course of nature, as trees, herbage and water, or by the hand of man, as buildings and fences. This is but common learning ; and there is no more room for question that a grant of land, *eo nomine,* will carry buildings and fences, than there is that it will carry growing trees and herbage upon, or mines and quarries in the ground.   This is probably the first time the suggestion was ever made, that the purchaser of a farm must have the fences mentioned in the deed, either for the purpose of acquiring a title to them, or having that title secured by the covenants in the conveyance.

The fact that buildings and fences may be owned by a different person from the one who owns the soil, has no tendency to show how much the defendant attempted to convey.   That must be settled by the deed ; and the deed just as plainly goes to the structures attached to the land, as it does to trees, mines and quarries.

It is said that the fence was not included in the grant, because the defendant did not own it.   That argument proves too much.   It proves that nothing was granted, if the defendant owned nothing which he professed to convey. ·  And it turns the covenant of seizin into nonsense ; for it will have no operation, except where it is of no use, to wit, where the grantor owned the thing granted.

It is true that ejectment cannot be brought for a fence after it has been severed from. the freehold, and become personal property.   And it is no less true that ejectment cannot be brought for trees, buildings or ores under the like circumstances.   But the argument does not prove but that all these things are real property before the severance takes place.

The covenant of seizin, when in the usual form, goes to the title ; and is broken the moment it is made, if the vendor had not the lawful title to the property granted, and to every part of it.   In this case the defendant covenanted, that he was " the lawful owner of the premises above granted, and seized of a good and indefeasible estate of inheritance therein."   The covenant extended to the whole of " the premises ;" and included the fences, as well as the trees, buildings, mines, quarries, and

other things which were granted by the deed. As to the fence, and the rails of which it was composed, the defendant had no title; he was not the owner; the property belonged to Brown. The covenant was as plainly broken, as it would have been had Brown owned the house and barn, or a coal mine or ore bed in the land. Notwithstanding the zeal with which the contrary doctrine was urged, no authority was produced in support of it. Cases were cited to show, that a mere lien or incumbrance, as a judgment or mortgage; or an easement, as a way over the land; none of which divest the title; do not constitute a breach of the covenant of seizin. (*Sedgwick* v. *Hollenback,* 7 *John.* 376; *Whitbeck* v. *Cook,* 15 *id.* 483.) Such cases are very far from proving, that the covenant is not broken where a part of the thing granted was not owned by the covenantor, but was owned by another.

It was a matter of no importance how Brown acquired title to the rails. It was enough that he owned them.

That parol evidence was inadmissible to control the legal effect and operation of the deed, is too plain a proposition to be disputed. If the plaintiff had been told at the time that Brown owned the rails; and more, if the rails had been expressly excepted by parol from the operation of the grant and covenant, it would have been no answer to the action. (*Townsend* v. *Weld,* 8 *Mass. R.* 146; *Noble* v. *Bosworth,* 19 *Pick.* 314; *Suydam* v. *Jones,* 10 *Wend.* 180; *Champion* v. *White,* 5 *Cowen,* 509; *Jackson* v. *Russell,* 12 *John.* 427.) A deed cannot be contradicted in its legal effect, any more than it can in its terms.

I am of opinion that the judgment is right, and should be affirmed.

JOHNSON, J. There is no reservation of the fence or rails in question in the deed. It purports to convey the entire premises; every thing that usually passes with the land and as part of it as well as the land itself. The covenant alleged to have been broken is as broad as the grant, and by it the grantor covenanted with his grantee that he was lawfully seized of an estate of

Mott *v.* Palmer.

inheritance in and had good right to convey every thing which the grant purported upon its face to operate upon. *Prima facie* the rails which were then lying in a fence upon the land were part of it and passed by the deed as land, with the seizin in fee in the vendor guarantied by the covenant.

But it is said that this fence in fact was not part of the freehold ; that having been built by a tenant under an agreement that it might be removed, it was mere personal property and did not pass by the deed : and the argument assumes that if it was not a part of the realty and would not therefore pass by the deed, the covenant of seizin did not extend to it. But it is no answer to say that because the grantor had no title, and could grant none, to what upon the face of his deed he undertook to convey, the covenant of seizin does not therefore apply to it and is not broken. The same answer might be given with equal force in regard to the title to the soil itself. It is not so much a question as to whether the title to the rails did actually pass under the deed, as it is conceded that they did not : and if they had there would clearly have been no breach. But it is more properly a question what upon the face of the instrument and by its terms the grantor undertook to convey and to covenant that he was seized of. The undertaking is one thing and its effect upon the subject matter of the undertaking and the rights of the parties under it quite another. And it is precisely because the grantor undertook to convey and to be the owner of that to which he had no right, and could convey none, that the action lies if it can be sustained at all. If the covenant of seizin shall be found to apply to things of this nature in ordinary cases between grantor and grantee, it seems to me quite clear that the defendant in error must recover.

It was strenuously urged by the counsel for the plaintiff in error that the covenant of seizin does not apply to any thing in the nature of fixtures or appurtenances which may or may not belong to the freehold, according to extraneous facts or circumstances ; that by it the grantor only covenanted that he was seized of a freehold estate in the premises, and that no other person had such an estate therein ; and that the covenant had

no application to any estate or interest in the premises less than a freehold. Before we adopt this doctrine as applicable to such things as usually pass by a conveyance as part of the realty, we must be careful to see the consequences to which it might lead. It has been well held that a highway regularly laid out running across land at the time of the grant was no breach of the covenant of seizin, because notwithstanding the easement the grantor was well seized of the title to the land and had good right to convey. (*Whitbeck* v. *Cook*, 15 *John*. 483.) But that is not this case. The want of seizin, of a right to convey, (which did not exist in that case,) is the very cause here alleged. It must be quite obvious, I think, that if a party under the circumstances of this case has no remedy under his covenant of seizin he must remain entirely remediless as regards his deed, because no other covenant is at all applicable. Under the covenants of warranty and for quiet enjoyment there must first be an eviction; and I think no one will seriously contend that the covenant against incumbrances has an application in any sense. Even conceding—which I do not—that the existence of a public highway or other easement is an incumbrance, it would not affect this case. Were the rule contended for the true one, it might and doubtless often would happen that a party holding premises under a deed with full covenants would have his premises stripped of buildings, fences, and every thing valuable belonging to the estate, and yet have no remedy against his grantor upon any covenant in the conveyance.

No one, I believe, has ever yet thought it necessary to require the grantor to insert a special covenant in his conveyance that he was seized and had good right to convey the buildings, fences, standing trees and growing grass upon the premises covered by the grant, and for the obvious reason that the covenant of seizin has hitherto been regarded as a sufficient protection against a want of title in the grantor, to any of these essential and often by far the most valuable portions of the premises purchased. The novelty of such a special covenant in a deed at this day would be a strong argument against its necessity. These personal covenants in our conveyances of real estate

have been framed with great care and proved by long experience ; and it can hardly be conceived that they have hitherto failed to protect parties or to give them a sufficient remedy in case of the loss of such valuable interests.

The ordinary covenant that the grantor is seized in his own right and has power to convey the premises granted must, it seems to me, be construed to extend to every thing attached to the soil that usually passes by deed as real estate, as fully as though the specific thing were named, or a covenant framed for it by itself; and such, I think, has been the general understanding of courts and conveyancers.

WRIGHT, J. and GRAY, J. were also for affirming the judgment.

GARDINER, J. dissenting. The argument by which the rails in question are converted into real estate, in order to bring them within the purview of the grant of the defendant, is substantially as follows. Rails made into fence and attached to the freehold become part of the land. The rails in question were made into fence and attached to the land conveyed to Palmer. Therefore as between vendor and vendee, Brown's rails were a part of Mott's land : and it being admitted that Mott the defendant neither owned the rails nor " was seized of an indefeasible estate of inheritance therein," at the delivery of the deed, he is liable for breach of his covenants. This is plausible. The infirmity of the syllogism consists in what logicians call the *petitio principii.* It assumes the very point in issue, namely, that the rails in question were attached to the land so as to become parcel of the premises. This proposition, which is indispensable to the maintenance of the action, is not only unsupported by proof, but was conclusively disproved by the evidence. Brown, the tenant, swore " that he cut the rails upon his own lands, and put them in fence upon Mott's land for the purpose of cutting a piece of grass upon the premises, under an agreement with Mott that if he would build the fence there he might move it off whenever he pleased."

The question is, were these rails, under the circumstances, attached to the freehold ? Is there not something of an absurdity in asserting that the property of one man placed upon the land of another with the unlimited right of removal becomes thereby a part of the inheritance ? The assumption, it is believed, has no foundation in principle or authority. Rails upon a fence are constructive fixtures. (3 *Kent's Com.* 347, *n.*) They are in their own nature personal property, and become parcel of the realty, as the term fixture imports, in virtue of their annexation to the land. (*Id.* 345, *n.*) The annexation which will convert personal into real estate, is not affected by placing the chattel upon or even by affixing it to the land : it must be fixed to the freehold *perpetui usus causa.* (*Id.* 347 *and note; Walker* v. *Sherman,* 20 *Wend.* 647, 655; 3 *Dane's Abr.* 156; 4 *Adol. & Ellis,* 884.) Hence, if the annexation is made by virtue of a contract with the owner of the land for the purposes of trade, (3 *Kent,* 345; 2 *R. S.* 83, §§ 6, 7, 8,) or of agriculture, ( *Whiting* v. *Brastow,* 4 *Pick.* 310,) the chattel does not become a part of the freehold, but remains personal property. In this case, the fence was built for the purpose of cropping a part of the land under a contract with the owner which secured to the tenant the right to remove it at pleasure. The rails of which it was composed were never attached to the freehold, and were consequently personal property at the time of the conveyance to the plaintiff. And the covenant of seizin could have no more application to them, than to the vehicle by which they were transported to the premises.

Again, it was urged that the grantor was estopped from denying that the fence which was upon the premises in question and apparently attached thereto, was parcel of the land con veyed. This was the view taken by the judge at the trial, who ruled accordingly. If the defendant was estopped, it must be upon the ground of his grant or his covenant, or both. But the grant is of *land,* and the defendant covenants that he owns the *land described,* and is seized of an estate of inheritance therein. He declares by his covenant, that all *the land,* in other words all *that is land* within the bounds given in the

deed, he owns and has in it an estate of inheritance. It is a palpable perversion of such a contract to turn it into a warranty that every thing *upon* the land (which would pass with it if attached) is in fact a part of the freehold. No authority sanctions such a principle. We have been referred to cases in which it has been held that crops growing pass to the vendee as incident to the land, and that the vendor is not permitted to contradict the effect of his deed by setting up a parol exception at the time of the conveyance. But in all these cases, the property sought to be exempted from the operation of the grant was the property of the vendor attached to or appurtenant to the land. Crops will thus pass; so also will a right of way; but if either be severed from the land prior to its conveyance, by sale or release, the vendor is not estopped from showing the fact, nor is he liable upon his covenant of seizin. He is owner of the land and seized thereof notwithstanding the severance. The ownership of the property determines its character, whether it is part of the freehold, or an appurtenance, or a mere chattel. (4 *Kent*, 468.)

It has been held in effect that a grant of liberty to dig turf, or of the herbage, (*Com. Dig. tit. Grant*,) or of an easement, as the right of way, (2 *R. S.* 90,) or of particular trees, (4 *Coke*, 63,) although made prior to the sale of the land, is not a breach of the covenant of seizin. The reason is assigned by Coke—" for these passed to the first grantee but a particular right." In these cases the turf, herbage, trees, and road (if opened) would apparently be annexed to the land, or as Coke expresses it in reference to trees, in property they are divided from the land although in fact annexed. (4 *Coke*, 63.) The same is true *a fortiori* of a constructive fixture. (*Ropp* v. *Baker*, 4 *Pick*. 243.)

But the plaintiff in his declaration avers that the rails were *attached* to the *freehold* and premises described in the indenture, and were *part* and *parcel* thereof." This was a question of fact, the affirmative of which the plaintiff was bound to establish. Until this was done, the fence was not within the grant, and of course the deed could not be relied upon as an estoppel. It was in

fact a question of parcel or no parcel, upon which both parties were at liberty from the necessity of the case to give evidence, in order to identify the subject of the conveyance.

And finally, no precedent from the earliest period can be found of an action of this character. The books are full of controversies between vendor and vendee as to the effect of a grant upon property claimed as fixtures. But this is the first attempt to extend the covenant of seizin to *personal* property, upon the ground that the vendee probably *supposed* that it was part of the freehold. There are substantial reasons for this silence. The covenant of ownership and of seizin are broken, if at all, upon the delivery of the deed. If at that time the supposed fixture is really such, it passes by the grant; if it is not a fixture, it remains a mere chattel, and cannot be the subject of covenants which are restricted to the land only. In neither case, consequently, can there be a breach of the covenants. Hence the declaration in this cause is a *felo de se*, and must be so in every case of a similar character. For example, the plaintiff avers, 1st. That the rails were attached to the freehold, and are parcel of the premises. This averment was necessary in order to bring the subject within the grant. And 2d. by way of breach, " that they were not at the time of the conveyance the *property* of the defendant." The two propositions are utterly repugnant. For if the rails were owned by a person having no interest in the land, they were for that reason personal property, and therefore could not be a part of the freehold. If on the contrary they were parcel of the land, they could not be the property of a person having no interest therein, and of course would pass by the grant. In *Rogers* v. *Woodbury*, (15 *Mass.* 158,) the action was trover for a fish house; and it was held by the court, " if the owner of the land did not own the building, and if the owner of the building had no interest in the land, the building was personal property." In the case before us, the owner of the land did not own the fence, and the owner of the fence had no interest in the land. (*Smith* v. *Benson*, 1 *Hill*, 176; 4 *Coke*, 63; 3 *McCord*, 553; 8 *Mass.* 411; 1 *Fairf. R.* 429.)

I am of opinion that the charge of the judge was erroneous and that there should be a new trial.

Jewett, C. J. and Jones, J. also dissented, and concurred in the opinion of Gardiner, J.

Judgment affirmed.