## TIBBETTS v. HORNE.

The record of a chattel mortgage is not constructive notice of the title of real estate.

Machinery designed for annexation to a mill, and mortgaged as chattels before annexation, becomes a part of the mortgagor's mill when affixed to it by the mortgagor with the mortgagee's consent, and passes as real estate to a subsequent purchaser of the mill without notice.

BILL IN EQUITY, for an injunction against a severance of a steam-boiler, smoke-stack, engine, and fixtures from a bobbin mill. Facts agreed. Waterhouse & Frost bought the machinery of the defendant, and gave him a chattel mortgage of it to secure the payment of the purchase-money. Afterwards, and before June 20, 1887, they affixed it to their mill in the usual manner. June 20, 1887, they hired money of the plaintiff, and secured the loan by a mortgage of the land and mill and the machinery in the mill, the plaintiff having no knowledge of the chattel mortgage. When the defendant took his mortgage, he knew that Waterhouse & Frost intended to put the property in their mill.

*W. S. Pierce*, for the plaintiff.

*H. V. Moore* and *J. A. Edgerly*, for the defendant.

DOE, C. J. " There is no principle of public policy to be sub-served by fostering the claim of one man to the enjoyment and exercise of a right and interest in and over the real estate of an-other, at variance with the record title and apparent ownership. But, on the other hand, the policy of the law of this state is, that the public records . . . should show the true state of the titles. . . . Whatever may be the rights or the nature of the interest in respect to such property [buildings and other structures placed by A on land of B] as between the original parties to the contract, . . . it seems to be well settled that a building, erected as the one in question was, would become a fixture and a part of the freehold, so as to pass by the deed of the owner of the land to a *bona fide* purchaser without notice. This doctrine has been fully settled in Connecticut. 10 Conn. 375. To hold a dif-ferent doctrine would always leave the purchaser in doubt as to the true state of the title to the property which he was purchasing, or the nature and extent of the claims which third persons might have upon it. The . . . records would give him no light upon the subject. The principal value of the property might be in the buildings, and the purchase made solely with reference to them, and yet, after the bargain was completed and the consid-eration paid, he might find that a third party owned the build-ings." *Powers* v. *Dennison*, 30 Vt. 752, 756, 757.

" The defendant Root must have understood, when he sold the property to Shants & Co., that they intended to put the property to use in advance of the payment of the price; and from the kind and nature of the property he must have expected that in its use it must necessarily be annexed to the realty substantially in the manner in which it was, and thereby become apparently a parcel of the realty. What he knew, or had reason to suppose and did suppose, was to be done with the property he must be taken to have consented to, as he did not object. Root, therefore, having, by implication at least, if not expressly, consented that the prop-erty might be incorporated with the realty of Shants & Co. in the manner it was, and they thereby become clothed with the apparent title as incident to their record title to the real estate, whereby the mortgagee was misled and induced to part with his money on the credit of the property, the equity of the mortgagee is para-mount to that of the conditional vendor." *Davenport* v. *Shants*, 43 Vt. 546.

" The policy of our law is, that titles to real estate shall appear upon record, so that all may in this way be informed where the legal estate is. But were this new mode of conveyance to prevail, incumbrances might frequently be found to exist, against which

no vigilance could guard, no diligence protect. Our records would be fallacious guides; and when we had gained all the information they could give, we should remain in doubt as to the title. It is much better to leave those who had ventured to rely upon the word or honor of another, to resort to that word or honor for their redress, than to suffer a person who had resorted to the official register to be defeated by secret claims of this kind. The law cannot prefer the claims of those who take no care of themselves, to those who have faithfully used all legal diligence. If a loss is to be sustained, it is more reasonable that he who has neglected the means the law put into his power should suffer, rather than he who has used those means." *Prince* v. *Case*, 10 Conn. 375, 381.

In *Ford* v. *Cobb*, 20 N. Y. 344, 350, 351, the court says,—" The recovery [in *Mott* v. *Palmer*, 1 N. Y. 564] could be sustained only on the assumption that fences were *prima facie* parcel of the freehold, but might legally become personal property by force of such an agreement as was proved in the case. . . . It is conceded that there must necessarily be a limitation to this doctrine, which will exclude from its influence cases where the subject or mode of annexation is such that the attributes of personal property cannot be predicted of the thing in controversy. Thus, a house or other building, which, from its size, or the materials of which it was constructed, or the manner in which it was fixed to the land, could not be removed without practically destroying it, would not, I conceive, become a mere chattel by means of any agreement which could be made concerning it. So of the separate materials of a building, and things fixed into the wall so as to be essential to its support, it is impossible that they should by any arrangement between the owners become chattels. . . . The question in the present case therefore is, whether the method in which these salt-kettles were affixed to the freehold was such that they can still be claimed as chattels, upon the principle of " *Mott* v. *Palmer*, *supra*, and *Godard* v. *Gould* (14 Barb. 662), "or whether they are to be considered as real property within " *Fryatt* v. *Sullivan Co.*, 5 Hill 116.

" It is said that the execution . . . of a chattel mortgage upon it [boilers, engine, shafting, and gearing], before it was placed in the mill, would be sufficient to preserve its personal character. . . . A man employs a carpenter and mason to build a brick house for him upon his lot, and pays them in full the price agreed upon. The mason puts his brick in the walls. The carpenter places his joists and timbers in the proper places in the house. The house is finished, and is occupied by the owner. It then appears that the maker of the brick held a chattel mortgage upon them executed by the mason, and that the sawyer of the timber held a chattel mortgage upon it executed by the carpenter. Are these articles, now a part of the house, still held upon the chattel mortgages, so that the creditors can despoil the house to

obtain their possession, or compel the owner to pay this value? I take it they are not." *Voorhees* v. *McGinnis*, 48 N. Y. 278, 287.

"Upon the question whether the character of property can be changed by agreement from realty to personalty as against a *bona fide* purchaser without notice, there is not entire harmony of the authorities; but we regard the better opinion as being that such a purchaser must have notice of the agreement before he acquires title, or he will be entitled to claim and hold everything which appears to be, and by its ordinary nature is, a part of the realty. To hold otherwise would contravene the policy of the laws requiring conveyances of interests in real estate to be recorded, seriously endanger the rights of purchasers, afford opportunities for frauds, and introduce uncertainty and confusion into land titles." *Hunt* v. *Bay State I. Co.*, 97 Mass. 279, 283.

In *Haven* v. *Emery*, 33 N. H. 66, 68, 69, the plaintiffs delivered iron rails to a railway company under a written agreement that the title should remain in the plaintiffs until they were paid. The defendants were mortgagees of the road. In the opinion, the court says,—"As between the parties to the contract, the intention is plain that the property should not vest in the road until the iron was paid for; and that intention will prevail between the parties, unless the laying of the rails in the track necessarily made them an intrinsic and inseparable part of the road in spite of the agreement which reserved the property in them to the plaintiffs. . . . The rails were laid, according to the provisions of the agreement, in a particular part of the track, and that part designated by a written certificate: there is, therefore, no difficulty in tracing and identifying the iron which the plaintiffs claim. It is not like a case where bricks, or nails, or other materials are used in the construction of a house, and so incorporated with the building that they cannot be separated and traced. *Cross* v. *Marston*, 17 Vt. 540.

"We see nothing in the way in which the rails are annexed to the road, or in the manner in which they are used upon it, that incorporates them more essentially with the road than in the case of a house or a fence set on land of another, with his assent, and under an agreement that the house or fence shall remain the personal property of the original owner. And a house built on land of another, or a fence set on his land, with his assent, and under an agreement that the house or fence shall remain the personal property of the party who places it on the land, does not become annexed in law to the land. The agreement of the parties in such case supersedes the general rule of the law. . . .

"As between the parties, then, to this contract, we are of opinion that the rails remain the property of the complainants. Has the right of the complainants been divested or affected by the mortgage to the trustees for the bond-holders? . . . . There

are some cases which might seem to carry the idea that a purchaser of land would be bound by an agreement of the seller, which gives to what would otherwise be part of the land the character of personal property, and vested the title to it in another, though the purchaser had no notice of the agreement. *Mott* v. *Palmer*, 1 Comst. 564. We are not yet prepared to acquiesce in such a doctrine. Primarily, and in the absence of notice to the contrary, the purchaser would seem to have a right to suppose that he was buying with all the incidents and appurtenances which the law, as a general rule, annexed to his purchase ; and we should hesitate before we held that he could be affected by a private agreement not brought to his knowledge, which changed the natural and legal character of the property."

In *Cochran* v. *Flint*, 57 N. H. 514, 545, it was said that the consent of a conditional vendor of saw-mill machinery that it should be affixed to real estate in such way that it would pass by a deed of the land, if it belonged to the land-owner, ought to be inferred from the nature of the thing and the ordinary mode of its use ; but the inferred consent was held to be, that it should be affixed to the mill of the conditional vendee, and not to a mill of a third person or a mill previously mortgaged to a third person. The view, that a purchaser of land has a right to suppose he is buying with all the incidents and appurtenances which the law, as a general rule, annexes to his purchase, was apparently accepted in *Corey* v. *Bishop*, 48 N. H. 146, 150 ; was expressly approved in *Carroll* v. *McCullough*, 63 N. H. 95, 96 ; and was the basis of the decision in *Mott* v. *Palmer*, 1 Comst. 564. But the question against whom this right operates is one on which the authorities are not agreed. As against Waterhouse and Frost, who mortgaged machinery to the defendant when it was personal property, the defendant would claim that he had a right to suppose that its legal character would not be changed by its annexation to the mortgagors' mill. As against the same mortgagors, the plaintiff, a mortgagee of the land and mill, had a right to suppose the machinery was a part of the mill, and the mill a part of the land. Between some persons, the machinery might be personalty ; between others, it might be realty. Between the defendant, a mortgagee of chattels who authorized their annexation to the mortgagors' mill, and the plaintiff, a subsequent mortgagee of the mill who had no notice, actual or constructive, that the defendant claimed a lien on an apparent part of the mill, the question of right is determined by the registry law.

The defendant, as mortgagee of chattels, has the rights of a purchaser holding a recorded title of personalty. The plaintiff, as mortgagee of the land, has the rights of a purchaser of real estate. The public records of chattel mortgages and land titles are an important protection of purchasers. Constructive notice is not given by the record of a chattel mortgage in the county registry of

deeds, or by the record of a realty mortgage in the town-clerk's office.   Before taking a mortgage of the land, the plaintiff was not bound to examine the record of chattel mortgages for the title of machinery that was annexed to the land in a manner that made it apparently as much a part of the land as the removable doors and windows of the mill.   The defendant, being bound to know this, should have taken a mortgage of the land or other security consistent with the safety intended to be given to innocent purchasers by the registry law.   By taking no mortgage of the realty, of which, with his assent, the machinery became an apparent part, he gave Waterhouse and Frost apparent authority to convey the machinery as realty.   The purpose of the registry law would be defeated, if the county record could not be relied upon in such a case by a subsequent purchaser having no notice of a defect in the apparent title.   The town record not being constructive notice of such a defect, the defendant's chattel mortgage became a secret claim when the annexation of the machinery to the land had referred all inquirers to the registry of land titles for information.

*Decree for the plaintiff.*

CARPENTER, J., did not sit: the others concurred.