RITCHEY et al. v. SOUTHERN GEM COAL CORPORATION.

(District Court, E. D. Illinois. May 14, 1926.)

No. 1842.

1. Courts ⬾359—Whether conditional sale vendor's rights are superior to those of mortgagee of premises where purchased article is installed will be determined according to law of state where case arises.

Whether rights of conditional sale vendor are superior to those of person holding mortgage on premises in which vendee installed purchased article will be determined according to law of state where case arises.

2. Sales ⬾473(1).

Secret reservation of title to secure purchase price is valid in Illinois as against bona fide purchaser for value.

3. Fixtures ⬾22—Rights of vendor of machinery for use in coal mine held inferior to those of subsequent mortgagees having no notice of retention of title; property having lost its individual characteristics on being annexed to soil.

Machinery for use in coal mining title to which was reserved in vendor until payment, *held* to have lost individual characteristics in being annexed to soil, and to have become part of completed structure intended as permanent improvement, and under law of Illinois vendor's rights thereunder were inferior to those of subsequent mortgagees having no notice of vendor's title.

In Equity. Suit by Sherman S. Ritchey and others against the Southern Gem Coal Corporation, wherein the Stephenson Adamson Manufacturing Company intervenes. Intervening petition denied.

Winston, Strawn & Shaw, of Chicago, Ill., for petitioner.

Brown, Fox & Blumberg, of Chicago, Ill., for bondholder.

LINDLEY, District Judge. The intervening petitioner seeks to reclaim as against the bondholders secured by subsequent mortgage, the tipple, structure, refuse bin, and machinery furnished and erected by it at the mine of the Southern Gem Coal Corporation. It prays in the alternative for the assumption by the receiver of the balance due of approximately $5,000.

[1] On July 8, 1922, petitioner contracted in writing with the coal corporation to furnish the machinery and material covered by the specifications and to erect the improvement upon the premises of the coal corporation. The specifications covered the material necessary to erect the mine tipple with shaker screens, chutes, hoppers, hoisting sheaves, screw conveyer, refuse conveyer, belts, shafts, counter shafts, carriers, pulleys, shafting, steel work, and steel structure and all other material necessary for the construction of a fully equipped mine tipple for hoisting and handling coal at the mine shaft. The specifications described this material in an itemized list covering fourteen typewritten pages, and consisting of some five hundred or more different items. All of this, when the structure was erected, constituted one improvement erected upon and bolted to concrete foundations, as provided by the contract. The title to the property was reserved in the vendor until full payment therefor. It was agreed that no machinery furnished under the contract should become a fixture by reason of being attached to real estate. On October 2, 1922, a contract of identical terms for additional material for the construction of refuse bin, structural supports, refuse conveyer, and local trade bin was entered into. The entire structure as completed is an integral part of the mine; in fact without such a tipple and structure the mine would be practically useless for the purpose of mining coal. After the completion of the structure and while the same was in use, the coal corporation executed its trust deed or mortgage, securing bonds of the face amount of $450,000. This mortgage was duly recorded on November 21, 1923, and purported to convey all of the real

estate and other property owned and used by the coal company. The tract upon which the tipple and completed structure were erected was described in said mortgage by metes and bounds. The trustee and bondholders had no notice of the title relied upon by the petitioner, and now insist that the lien of their mortgage is superior to the rights of the petitioner under said contract. Whether the rights of a conditional sale vendor are superior to those of a person holding a mortgage on the premises in which the vendee installed the purchased article will be determined according to the law of the state in which the case arises. First Nat. Bank of Evanston, Wyo., v. Bank of Waynesboro et al. (C. C. A.) 262 F. 754.

[2] By a recent decision (Sherer-Gillett Co. v. J. W. Long, 318 Ill. 432, 149 N. E. 225), the Supreme Court of Illinois held that the Uniform Sales Act adopted by the Legislature of this state has changed the law with regard to secret conditional sales so far as the rights of subsequent incumbrances are concerned, and that a secret reservation of title to secure the purchase price is valid as against a bona fide purchaser or subsequent incumbrancer for value. The law of this state is fixed by said decision,

However, the question is further complicated by the facts that the items of personal property lost their identity by erection into an integral whole, and that this structure became a part of the realty. The bondholders insist that, though the reservation would have been valid had the individual pieces of material and machinery remained personal property, yet, having been made into an integral part of the real estate, they hold their mortgage free of any reserved title to personal property. In view of the language of the Supreme Court in the case last above mentioned, the intervening petitioner here occupies the same position that it would have occupied had it taken a chattel mortgage upon the various items included within the various specifications, and had the same duly recorded.

In the case of Sword v. Low, 122 Ill. 487, 13 N. E. 826, the Supreme Court held that, where it is agreed, on the sale of a steam boiler and engine, that the vendor is to have a lien thereon, by chattel mortgage, until the price is paid, and the purchaser gives a mortgage on the same for the price, and afterward, after setting up the same on a lot purchased by him, he renews the chattel mortgage, in which he treats the property as chattels, it will not become part of the realty if it may be removed without material injury to

the freehold; that the title of the chattel mortgagee is superior to that of a subsequent purchaser for value. If the facts of the present case are those of that case it is decisive of the issue now before the court. However, the Supreme Court, there used certain language which is most material. It said:

"We are referred to very respectable authority, holding that, although the articles were personalty at the time of making the chattel mortgage, if they afterwards became attached to the realty as fixtures, they would thereafter pass with the land under a deed or mortgage thereof, and that the chattel mortgagee must seek his remedy against those who wrongfully converted the mortgaged articles, and thereby deprived him of his security. We do not question the correctness of the rule announced in cases where it properly arises."

And the reason for the decision appears in the following language:

"While it may be objected that under this ruling the examination of title to realty will necessarily involve the examination of the chattel mortgage record, to determine whether articles apparently attached to the soil as permanent fixtures are subject to liens as personalty, we can see no hardship in holding that as to articles which necessarily retain their individual characteristics after being annexed to the soil, and which may or may not be fixtures, and which it is apparent may be removed without material injury to the freehold, the purchaser or incumbrancer of the realty will be required to take notice of what is apparent upon the public record."

[3] These two quotations seem to the court to point out a distinction between the present case and the one then under discussion. The items of personal property here became a part of the real estate. They lost their individual characteristics upon being annexed to the soil and became a part of the completed structure intended as a permanent improvement of the property for coal-mining purposes, and as a complete accession to the freehold. The petitioner itself placed the various parts of the structure upon the premises, erected it, furnished the labor necessary to construct it and firmly affixed it to the realty. By its acts the various pieces of steel, rope, shafts, the counter shafts, and the multitudinous items of personal property that went into this structure lost their identity and individual characteristics and became a part of the completed structure as much as the grates, electric fixtures, plumbing, hot water pipes, and the steam heating apparatus of a dwelling. Such articles as these the Su-

preme Court of Illinois said cannot, when put into a structure, retain their characteristics as personal property because of any agreement between the vendor and vendee. Sword v. Low, supra. A material part of the construction here in question was the labor of erection, the making of the whole from the various parts. Mr. Justice Thompson, in Sherer v. Long, supra, pointed out that the vendor may by his acts be estopped from claiming any title under the conditional contract of sale. Here the vendor deliberately merged various items of personal property in the freehold and made them a part thereof. The petitioner itself furnished the material and labor to bring about this result. It stood by without action for over three years. Surely it cannot be said to have the right to remove this completed structure as against incumbrancers for value, who from the examination of the premises would see no items of personal property but only the integral whole of the real estate, and who upon an examination of the records would find no lien upon the real estate. As the seller agreed that the fixtures should be converted in all outward appearance into real property, he assumed the risk of their being sold as such, and it would be contrary to justice to allow the seller to save himself by casting the consequences upon the purchaser of the realty. See Knowlton v. Johnson, 37 Mich. 47; and Allis, etc., Co. v. Atlantic, 164 Iowa, 8, 144 N. W. 346, 52 L. R. A. (N. S.) 561, Ann. Cas. 1916D, 910. In Union Bank v. Wolf, 114 Tenn. 255, 86 S. W. 310, 108 Am. St. Rep. 903, 4 Ann. Cas. 1070, it is said that a conditional seller of property which has become the integral part of real estate should not be allowed to assert his claim thereto against innocent third persons, for the reason that the policy of the law in respect to real estate titles, which is opposed to secret liens, requires that the public records shall contain evidence of all liens and incumbrances. In Washburn v. Inter-Mountain Min. Co., 56 Or. 578, 109 P. 382, Ann. Cas. 1912C, 357, it is said that to hold otherwise would render land titles uncertain, endanger the rights of purchasers, and afford opportunities for fraud.

The bondholders in good faith loaned money and received as security the trust deed securing the same which conveyed the real estate of which the property now in question was in law a part. Surely it devolved upon the petitioner, who seeks to change the legal character of the property, either to pursue the mode prescribed by law for incumbrancing the kind of estate to which the property appeared to the world to be or to take the risk of its loss in case it should be conveyed as real estate to an incumbrancer without notice. This conclusion is the only one consistent with the language of the Supreme Court in Sword v. Low, supra, wherein the court approves the general doctrine that, although the articles were personalty at the time of making the chattel mortgage, if they afterwards became attached to the realty as fixtures, they would thereafter pass with the land under the mortgage thereof, in view of the further fact that the court limited its holding of validity of the chattel mortgage there in question to articles which necessarily retained their individual characteristics after being annexed to the soil; that is, an engine and boiler. Cases in which other courts have reached the same conclusion are Pierce v. George, 108 Mass. 78, 11 Am. Rep. 310; Tibbetts v. Horne, 65 N. H. 242, 23 A. 145, 15 L. R. A. 56, 23 Am. St. Rep. 31; Campbell v. Roddy, 44 N. J. Eq. 244, 14 A. 279, 6 Am. St. Rep. 889; Tifft v. Horton, 53 N. Y. 377, 13 Am. Rep. 537; Brennan v. Whitaker, 15 Ohio St. 446. In many other cases the filing of a chattel mortgage upon fixtures has been held not to be constructive notice to a subsequent purchaser or incumbrancer of the realty. Elliott v. Hudson, 18 Cal. App. 654, 124 P. 108; Tibbetts v. Horne, 65 N. H. 242, 23 A. 145, 15 L. R. A. 56, 23 Am. St. Rep. 31; Brennan v. Whitaker, 15 Ohio St. 446; Case Mfg. Co. v. Garven, 45 Ohio St. 289, 13 N. E. 493; Ice, Light & Water Co. v. Lone Star Engine & Boiler Works, 15 Tex. Civ. App. 694, 41 S. W. 835; Phillips v. Newsome (Tex. Civ. App.) 179 S. W. 1123.

For the reasons stated, the petition is denied.