### Richard Cole v. A. J. Roach, Administrator.

1. Appellant filed his affidavit in the court below, alleging that " he is una- " ble to give bond and security for costs required by law for the appeal " of this cause to the Supreme Court, and he desires to appeal and carry " it up to said court." *Held*, that the affidavit is in conformity with the Act of May 3d, 1871, " for the protection of poor persons in cases of " appeal in civil suits." (Pamphlet Acts, 1st Session of 1871, page 75.)

2. See this case with reference to the law of fixtures. *Held*, that a gin stand, not attached to the realty, though used for the purposes of the farm, was not a fixture. Nor is a bell to be regarded as a fixture, though

used for farm purposes, when it was only set upon posts, and not permanently affixed.

3. A wooden cistern, placed by the side of a house, and depended upon to supply water for the premises, should, it seems, be considered a fixture in this State.

4. A liability by reason of the conversion of chattel property is provable as a debt, under the 19th Section of the U. S. Bankrupt Law; and therefore a discharge in bankruptcy bars a suit for damages based upon such conversion.

APPEAL from Liberty. Tried below before the Hon. William Chambers.

The opinion of the court states the case.

*E. B. Pickett* and *W. B. Denson*, for the appellant.

*Wharton Branch*, for the appellee. The deed from Cole and wife conveyed the land, with all of its " rights, members, " hereditaments, and appurtenances," to McKim's estate, and under that deed everything passed which were included in the verdict; for they were all on the place long before Cole and wife conveyed, and, as between the vendors and vendee, gristmills, cotton gins, fences, locks, keys, doors, windows-blinds, windows, and all agricultural erections on plantations, of every description, including bells to ring up the hands, and cisterns and wells of water to furnish water for the plantation and family use, are all parts of the realty, and pass with the land. (See Chitty on Contracts, 318 to 326; Miller *v.* Plumb, 6 Cowan, 665; Farris *v.* Walker, 1 Bailey, 540; McDaniel *v.* Moody, 3 Stew., 314; State *v.* Elliott, 11 N. Hamp., 540; Winslow *v.* Merchants' Ins. Co., 4 Metcalf, 314; 2 Kent, 5th ed., 343–345; Goodrich *v.* Jones, 2 Hill, 142; Gibson *v.* Vaughn, 2 Bailey, 389; 2 Smith's L. C., 99 *et seq.;* Dart's Vendors and Purchasers of Real Estate, 60 and 61.)

Cole knew he was going to take the benefit of the Bankrupt Act, and McKim's administrator, who received the note, did not. Was that fair play? Was it fair to rent the orphans' property, and to fail to pay the rent, and refuse to give the

security required by the law under which he rented, and which in renting he agreed to do ?

The discharge in bankruptcy does not exempt Cole from every liability; for if it did, he would now be released from the duties he owes to his God, his country, his neighbor, and himself. The discharge on its face says, from *all* " except such " as are by said Act excepted from the operation of a discharge " in bankruptcy." It does not release him from any debt created by fraud or embezzlement. (See Brightley's Dig., Vol. II., from Section 1857 to 1869, pages 91 and 93 ; Section 78, Article 10, and Section 83, Article 11.) A tort to realty is not provable against a bankrupt's estate. All debts that are provable are mentioned in Article 5, Sections 34 to 40, inclusive ; and Section 40 concludes by saying : "No debts other than " those above specified shall be proved or allowed against the " estate." The word " converted," as used in the Bankrupt Act (Section 40, page 84, Vol. II. Brightley's Dig.), does not mean that a man can take a part of his neighbor's realty, and by detaching it make it a chattel ; nor his neighbor's personal property and make it a part of his own realty. There are no decisions under the present bankrupt law which settle the questions involved in this case definitely.

Where damages can be ascertained only by the intervention of a jury, as in all cases of tort, such claims are not provable in bankruptcy. Where the demand is of a mixed nature, as in some cases of contract ; where a claimant can sue for the tort, or waive that and demand the money ; if he claim damages for the tort, he cannot prove. If he demand the money only, he *may* but not *shall*, as, for example, if the bankrupt have sold goods under an execution which is afterwards set aside, he may claim for the *tort*, or, waiving that, demand the money. If he elect the former, he cannot prove ; if the latter, he may. (See Johnson *v.* Spiller, Doug., 167 ; Utterson *v.* Vernon, 3 Term R., 548 ; Parker *v.* Norton, 6 Term R., 695 ; Dart's Vendors, 376.) The administrator in this case could waive nothing. The jury were not misled, and appellant has not been damaged

by the charge given nor by the refusal of those asked for; and unless the verdict is wrong, it was not error to overrule the motion for new trial. The law supports the verdict, and the facts warrant it; and if there were no laws at all, equity ought to protect McKim's estate.

OGDEN, J. The affidavit of the inability of the appellant to give security for costs appears to be in compliance with the act of the 12th Legislature, approved May 3d, 1871, which act provides that such affidavit " shall operate a perfection of the appeal in respect to the matter of costs." The motion to dismiss the appeal is therefore overruled.

This suit was brought against the appellant for a balance due for the rent of a certain farm, and for damages for the wrongful destruction and carrying off certain property belonging to said farm. The defendant, having received his discharge in bankruptcy, the suit appears to have abated so far as the demand for rent was concerned, but prosecuted to judgment for the damages resulting from the tortious carrying off from said farm certain specific property.

The evidence on the trial presents a peculiar state of facts, which raise some very interesting questions of law. It appears that many years ago the appellant purchased of John McKim a certain farm, and for the payment of a part of the purchase-money he executed his notes. He took possession of the property, cultivated and improved the same as his own, and, while so occupying the farm, he bought and placed upon the same a wooden cistern, a plantation bell, a corn or grist mill, and a gin stand. These articles he purchased and used for his own convenience in the cultivation of the farm, but they were none of them actually attached to or affixed to the soil, or to any building or erection on the same. The cistern was set upon blocks by the house, to catch water; the bell was temporarily placed or hung upon two posts for use, but in no wise fastened there; while the mill and gin stand were simply set upon the floor of the gin house, so as to be moved at

pleasure, but to be used for the benefit of the farm and those occupying it.

It further appears that at the close of the late war, the vendor, McKim, having died, and the appellant Cole, finding himself unable to pay for the farm, with the assent and approval of the probate court, conveyed the same back to the administrator of McKim's estate. The conveyance is in the usual terms, conveying the land, with all the rights, members, hereditaments, and appurtenances thereunto belonging, but no specific mention was made of the mill, gin stand, bell, or cistern. Afterwards the appellant Cole, without leaving the place on the execution of the conveyance, leased or rented the same, for one year. And at the expiration of the lease, he left the farm, taking with him the property before described, and for which the administrator of McKim's estate has prosecuted this suit for damages.

The first question which would naturally present itself to the legal mind, in determining the respective rights of the parties, is, were these chattels, the bell, cistern, mill, and gin stand, as they were then upon the land, fixtures to the soil, so that they would pass to the purchaser of the land, without specific mention? It may be difficult in many cases to determine from the authorities whether certain articles are fixtures, which will pass with the soil, or whether they are personal chattels, which will not pass; and it may be asserted with confidence, that no general rule can be laid down, which will apply to every case.

But there are rules which may be applied to most cases, and whenever clearly applicable they must settle all questions to which they are applied. Thus, in Hill on Fixtures, it is said : "By the term fixtures are denoted those articles which were "chattels, but which, by being physically annexed or affixed to "real estate, become a part of and necessary to the freehold." Again, the same author says that it requires a positive act of the person making the annexation, to change a chattel to a fixture; the intention to make the article a permanent annexa-

27

tion to the realty must, generally, affirmatively, and plainly appear, and where there is a doubt or uncertainty, the legal qualities of the article are not changed, and it must be deemed a chattel. (See 2 Smith's Leading Cases, 217.) In Cook *v.* Whitney, 16 Ill., 480, it is said that a chattel which is not let into the ground, or fastened to a thing which is let into the ground, is not a fixture. There must, however, be some exceptions to this general rule, since there are loose chattels which may never be fastened to the soil, but which clearly constitute a part of the realty, for the reason that the realty could not be held and enjoyed without them, such as deeds, keys, fence-rails and the like. (Climer *v.* Wallace, 28 Miss., 556.) There may be other chattels which were intended for a particular portion of real estate, and which might be of no use or value when taken from it; these should be considered as a part of the realty. But in the leading case of Walker *v.* Sherman, 20 Wend., 636, cited in Hill on Fixtures, Justice Cowen says: " I have ex-" amined a good many English and American cases, and they " are almost uniformly hostile to the idea of mere loose, " movable machinery, even where it is the main agent or prin-" cipal thing in prosecuting the business to which a freehold " property is adapted, being considered apart of the freehold for " any purpose." (See also Breman *v.* Whitker, 15 Ohio, 440.)

From the authority here referred to, it clearly appears that the mill and gin stand, being machinery in no way attached or affixed to the soil excepting by its own weight, was not a part of the realty, and did not pass to the estate of McKim by the deed of Cole. There is less doubt in regard to the character of the bell. Though it may have been purchased for the use of the farm, yet it had not, at the time of the sale by appellant, been permanently placed or attached to the soil, and was no more a part of the realty than it would have been had it remained on the wagon that brought it there. It clearly had not changed its personal character, and did not pass with the land. In a suit by the heir against the administrator, a cistern, sitting against the wall, was held in Massachusetts to

be a fixture and a part of the realty; but as between a land-
lord and a tenant, it has been often held by the courts, to be a
personal chattel, subject to removal by the tenant. We have
found no case deciding the question when raised as between
the vendor and vendee of realty; but we are inclined to the
opinion that in this country, where, in many instances, cisterns
are used as a substitute for wells, and where a house or farm,
without a cistern attached, would often be considered almost
uninhabitable, where a cistern has been placed against the
house for the purpose of supplying the inmates with water, and
has been used and depended upon for that purpose, it should
be considered a part of the realty, as much as the key to the
door, or the fence around the yard or field. It has become a
necessity to the farm, or dwelling, and should pass with it.

There is, however, another question raised in the record of this
case, which must dispose of the whole cause. The appellant,
at the time he removed the property from the farm, was in the
legal possession of the articles charged to have been removed,
and could be chargeable only for the damages for a wrongful
conversion thereof, and such a claim for damages was clearly
provable under the 19th Section of the Bankrupt Law of 1867,
which says, " all demands against the bankrupt for or on
" account of any goods or chattels, wrongfully taken, convert-
" ed, or withheld by him, may be proved and allowed as debts,
" to the amount of the value of the property so taken or with-
" held, with interest." We think there can be no doubt that
if appellant had wrongfully converted property of another,
while he was in the legal possession of the same, a claim for
damages for the conversion would have been provable under
the clause of the law cited. If, then, a claim for damages
could have been proved by appellee against appellant, in the
bankrupt court, then, under Section 34 of the same act, his
discharge in that court released him from this claim, and his
plea in bankruptcy should have released him from this suit.

For the reasons herein given, we think there is manifest
error in the judgment of the District Court, which will require

a reversal of the same, and as appellant's plea in bankruptcy has interposed an effectual barrier to any judgment against him in this action, the judgment is reversed and the cause dismissed.

. Reversed and dismissed.