## TAYLOR v. LEE.

(Court of Civil Appeals of Texas. Galveston. June 7, 1911.)

**1. JUSTICES OF THE PEACE (§ 174*)—APPEAL—JURISDICTION.**

Under Const. art. 5, § 19, fixing the jurisdiction of justices in civil matters at not to exceed $200, exclusive of interest, and providing for appeals in cases where the judgment is for more than $20, exclusive of costs, and Rev. St. 1895, art. 1294, providing that all cases brought to the district and county courts from inferior courts by appeal shall be tried de novo, an appeal from a justice of the peace cannot confer on the appellate court a jurisdiction which the justice did not possess, and hence it was error on an appeal by plaintiff to permit him to amend so as to state a cause of action for an amount beyond the jurisdiction of the justice.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 665–693; Dec. Dig. § 174.*]

**2. JUSTICES OF THE PEACE (§ 190*)—APPEAL—JURISDICTION.**

Where, on appeal from a justice, plaintiff erroneously amended so as to state a cause of action for an amount beyond the justice's jurisdiction, and for this reason a judgment in his favor was reversed, he was entitled on remand to reduce his claim to the amount within the justice's jurisdiction.

[Ed. Note.—For other cases, see Justices of the Peace, Dec. Dig. § 190.*]

**3. FIXTURES (§ 29*) — SALE — CONSTRUCTIVE SEVERANCE.**

Where the owner of a house, on leasing it to another, sold to him certain mirrors in place on the walls, chandeliers, etc., capable of being removed without material injury to the realty, such sale of itself operated as a constructive severance, making the property personalty, if it ever had been so attached as to be part of the realty.

[Ed. Note.—For other cases, see Fixtures, Dec. Dig. § 29.*]

**4. FIXTURES (§ 7*)—MIRRORS—CHANDELIERS.**

Mirrors attached to the wall by hooks and chandeliers merely screwed in place and susceptible of removal without injury to the realty were removable fixtures.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 7–13; Dec. Dig. § 7.*]

**5. FIXTURES (§ 9*) — RIGHT TO REMOVE — BONA FIDE PURCHASER.**

Where, prior to plaintiff's purchase of a house containing certain mirrors, chandeliers, etc., in place, which had been sold to the tenant, plaintiff was shown over the house by the tenant and his wife, who made no claim to the fixtures, which from their character and the manner in which they were attached, and from correspondence with the general design of the house, indicated that they were a part of it, so that plaintiff was led to believe he was buying them as a part of the house and had no knowledge of their sale to the tenant, plaintiff would be entitled to hold them as against the tenant as an innocent purchaser.

[Ed. Note.—For other cases, see Fixtures, Dec. Dig. § 9.*]

Appeal from Galveston County Court; George E. Mann, Judge.

Action by George H. Lee against Eustace Taylor. Judgment for plaintiff on appeal from a justice of the peace, and defendant appeals. Reversed.

John C. Walker, for appellant. James B. & Charles J. Stubbs, for appellee.

McMEANS, J. George H. Lee, the appellee, brought this suit against the appellant, Eustace Taylor, in the justice court of Galveston county, to recover the value of the following articles, which he alleged belonged to him and which had been wrongfully converted by appellant, viz.: Two mirrors of the alleged value of $50; two chandeliers of the alleged value of $100; and plants of the alleged value of $40. He prayed for judgment in the sum of $195. On the trial in the justice court, judgment was rendered in favor of the defendant, Taylor, and from this judgment the plaintiff, Lee, appealed to the county court. In the county court the plaintiff, Lee, filed what was termed an amended petition, in which he alleged the wrongful conversion by Taylor of the articles mentioned, and in addition thereto sued for certain damages which were not embraced in the suit in the justice court, and alleged the value of the articles and laid the damages sustained by him as follows: One framed mirror of the value of $100; one mirror of the value of $35; two chandeliers of the value of $150; plants of the value of $10; and certain damages done to a house belonging to plaintiff in removing the framed mirror, amounting to $40. He prayed for judgment for $325. A special exception urged by defendant to the claim of plaintiff for the value of the plants was sustained by the court, and this item was eliminated. The case was tried in the county court before a jury and resulted in verdict and judgment in favor of plaintiff, Lee, for $325, from which the defendant, Taylor, has duly prosecuted this appeal.

The evidence in the record justifies the following fact conclusions: Several years ago one Timson built a dwelling house in the city of Galveston, which he furnished with suitable household furniture. After residing there awhile, he leased the house, as furnished, to the defendant, Taylor, who occupied it as tenant of Timson for several years. In the early part of 1900 Timson sold all the furniture in the house to Taylor. Taylor continued to occupy the house until 1905, when it was sold by Timson to the plaintiff, Lee. Among other articles of furniture in the house was the framed mirror,

the smaller mirror, and a chandelier, and all these, under the undisputed evidence, were included in the sale by Timson to Taylor as part of the furniture of the house. The framed or larger mirror was owned by Timson, or his wife, prior to the time the house was built, and, when they moved into it, this mirror was placed or hung over the parlor mantel. The smaller mirror hung against the wall of another room and was suspended on wire. The chandelier was screwed into a fixture prepared to receive it. The other chandelier, the value of which is sued for, was bought by Taylor, himself, and in like manner screwed into its proper place. All these articles could be removed without damage to the building. It was shown, however, that the walls where the mirrors hung showed some discoloration after the mirrors were removed, due either to the fact that the places shaded by them had not faded in keeping with the balance of the room, or that, in painting the walls, the part behind the mirrors had not been painted. The space behind the larger mirror also showed signs of where it had been fastened and held in position. Timson testified that the mantels in the parlor and the bedroom above it, where the smaller mirror was hung, were not originally built with the intention of having mirrors attached to, or a part of, the house; that the mirrors were not in any way a part of the mantels in said rooms; that they were placed on the mantels by him after the house was completed, and rested on knobs on the mantels; that both mirrors were sold by him to Taylor; that they were never attached to the house except by ordinary hooks like all other movable pictures or mirrors; that they were moved with other furniture and effects from another house which he previously occupied; that the house was fully completed and ready for occupancy before the mirrors were brought in; that the mirrors and other furniture were brought in at the same time; that it was never his intention to treat the mirrors as realty and as a part of the house; that they were sold to Taylor when he bought witness' furniture and effects; that he did not sell the mirrors to plaintiff, Lee, when he sold him the house; that Lee asked him no questions about the mirrors or chandeliers at the time he bought; and that there was nothing in that transaction to induce him to believe he was buying the mirrors.

It is claimed by plaintiff, Lee, as the basis of his suit, that the mirrors and chandeliers were so attached to the house at the time he bought it as to make them immovable fixtures, and that they had thus become a part of the realty, and that the title to same passed to him at the time of his purchase of the house.

The only issue submitted by the court to the jury was whether the articles were immovable fixtures; the jury being instructed that, in case the jury found they were, to find for plaintiff for their value, but, in case the jury found they were not, to find for defendant.

[1] We are met in limine with what appears to be a fundamental error apparent of record in the proceedings of the county court for which we must of necessity reverse its judgment. The Constitution of this state (article 5, § 19) gives original jurisdiction to the justice courts in civil matters of all cases where the amount in controversy is $200 or less, exclusive of interest, and provides that appeals to the county courts shall be allowed in all cases decided in the justice's courts where the judgment is for more than $20, exclusive of costs; and article 1294, Revised Statutes 1895, provides that all cases brought up to the district and county courts from inferior courts by appeal shall be tried de novo. It is well settled that an appeal cannot confer upon the appellate court a jurisdiction which the court a quo did not possess. Railway v. Hughes, 44 Tex. Civ. App. 436, 98 S. W. 415; Rose v. Christinet, 77 Ark. 582, 92 S. W. 866; Baker v. Chisholm, 3 Tex. 157; Davis v. Stewart, 4 Tex. 223; Able v. Bloomfield, 6 Tex. 263; Horan v. Wahrenberger, 9 Tex. 313, 58 Am. Dec. 145; Wadsworth v. Chick, 55 Tex. 241; Wise v. O'Malley, 60 Tex. 588; Ross v. Anderson, 1 White & W. Civ. Cas. Ct. App. § 1032.

The jurisdiction of the justice court being limited to $200 in amount, the jurisdiction of the county court on appeal is also limited to that amount, because the county court thereby acquired only such jurisdiction as the justice court had; and, the judgment rendered in that court being in an amount beyond its jurisdiction, its judgment is necessarily void and cannot stand. For this reason the judgment appealed from must be reversed.

[2] The plaintiff having by amendment in the county court placed the amount in controversy at more than $200, and thus sued for an amount beyond the jurisdiction of the court, may again amend in that court, if he so desires, and reduce his claim to an amount within its jurisdiction. Miller v. Newbauer, 61 S. W. 974.

As before shown, the case was tried upon the sole theory that the rights of the parties depended upon whether the articles in question were immovable fixtures and therefore the title to the same passed to the plaintiff with the sale of the house, or movable and therefore the title and right of removal passed to Taylor upon his purchase of them from Timson.

[3] We think that when Timson sold them to Taylor, before any rights asserted by the plaintiff accrued, that this act of sale in and of itself operated as a constructive severance of them from the realty. [4] Besides this, we think that the evidence in the record is such that there can be no escape from the conclusion

that the articles were of such a nature and so attached to the house as to be susceptible of removal without injury to the realty, and were therefore what may be termed "movable fixtures," even though they had not been severed by any previous sale by Timson. We quote the following from McKeage v. Hanover Fire Insurance Co., 81 N. Y. 40, 37 Am. Rep. 471: "The mirrors and gas fixtures in controversy were placed in the house in 1870 by Mr. Curtis, who was then owner thereof. We concur with the court below in its conclusion that they were not so attached to the building as to form part of the realty. Gas pipes which run through the walls and under the floors of a house are permanent parts of a building, but the fixtures attached to these pipes are not. They are not permanently annexed, but simply screwed on projections of the pipes from the walls, left for that purpose, and can be detached by simply unscrewing them. It was shown that the fixtures in question were simply screwed on in the usual way. The mirrors were not set in the walls, but were put up after the house had been built, being supported in their places by hooks or supports, some of which were fastened with screws to the woodwork and others driven into the walls, and were capable of being easily detached from these supports without interfering with or injuring the walls. All these articles were, in their nature, mere furniture, and therefore chattels, and were not appurtenances to the building. Winslow v. Merchants' Ins. Co., 4 Metc. [Mass.] 311 [38 Am. Dec. 368]; Vaughen v. Haldeman, 33 Pa. 523 [75 Am. Dec. 622]; Rogers v. Crow, 40 Mo. 91 [93 Am. Dec. 299]; Montague v. Dent, 10 Rich. [S. C.] 135 [67 Am. Dec. 572]; Shaw v. Lenke, 1 Daly [N. Y.] 487; Lawrence v. Kemp, 1 Duer [N. Y.] 363; Beck v. Rebow, 1 P. Wms. 94. * * * They no more constitute part of the realty than would pictures supported by fastenings driven into the wall. Assuming that such fastenings, or supports become part of the building, it does not follow that the mirror or pictures which they support acquire the same character." See, also, 19 Cyc. 1045; Menger v. Ward, 28 S. W. 824, and authorities cited; Willis v. Munger, 13 Tex. Civ. App. 677, 36 S. W. 1012; Hutchins v. Masterson, 46 Tex. 551, 26 Am. Rep. 286; Moody v. Aiken, 50 Tex. 65.

[5] But granting that the sale by Timson to Taylor was a constructive severance of the articles from the realty, and granting that they were not so attached to the house as to necessarily become a part of the realty, it does not follow that Lee may not have acquired a superior right to hold them, because if at the time he purchased the house the fixtures were in it and in place, and from their character and the manner in which they were attached and their correspondence with the general design of the house, and the failure of Taylor and his wife, who showed him over the house before his purchase, to claim the fixtures, he was reasonably led to believe that he was buying them with and as a part of the house, and had no notice, actual or implied, of the sale of the same by Timson to Taylor, or that they belonged to Taylor, then he would be entitled to hold them as against Taylor as an innocent purchaser. 13 Am. & Eng. Ency. of Law, p. 618; Trull v. Fuller, 28 Me. 545. In the case cited it is held: "It is competent for the owner of real estate to sell, upon good and sufficient consideration, fixtures thereon which would pass under a conveyance of the realty if they were not excepted. The purchaser would be entitled to sever the same within the time stipulated, or, if no time was agreed upon, within a period which, under all the circumstances, and according to the character of the subject of the purchase, would be deemed reasonable. But without a severance, or some indication, actual or constructive, that they had been sold, they would, as between the purchaser and attaching creditors, or subsequent purchasers of the real estate to which they are attached, be considered as still a part of the freehold." This applies as well to the chandelier bought and placed in the house by Taylor himself as to the articles that were in the house when he bought them from Timson.

From what has been said it follows that the case was tried in the court below on a wrong theory; that, instead of proceeding upon the view that the fixtures were immovable and a part of the realty and passed to plaintiff with the sale of the land, the issue should have been confined to the question of whether the plaintiff acquired the superior right thereto by reason of his purchase of the realty under the reasonable belief that the fixtures went with the house and passed to him by reason of his purchase of the realty. This issue was pleaded by plaintiff, and the evidence was sufficient to require its submission to the jury.

This view obviates the necessity of passing upon other assignments of error presented by appellant, for if the assignments are well taken the errors complained of will not likely be again made upon another trial. The judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.