### BIGGS et al. v. MILLER et al.

(Court of Civil Appeals of Texas. El Paso. April 25, 1912. Rehearing Denied May 22, 1912.)

1. APPEAL AND ERROR (§ 759*)—BRIEFS—COPYING ASSIGNMENTS.

Under rules providing that assignments of error shall be copied in the briefs, such assignments will not be considered on review, where they are not correctly copied therein.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3094; Dec. Dig. § 759.*]

2. JUDGMENT (§ 829*) — CONCLUSIVENESS — RES JUDICATA.

Though a judgment of a federal court fixing water rights was entered in a suit, in which all the parties to a cause in the state court concerning the same water rights were parties, it would not necessarily abate the cause, for, though the federal decree was res judicata, it would not deprive the state court of jurisdiction to enforce it.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1510–1515; Dec. Dig. § 829.*]

3. JUDGMENT (§ 736*) — CONCLUSIVENESS — RES JUDICATA.

Where, in a former suit for the settlement of water rights, the question whether the location and original construction of the headworks of one irrigation system were such as

to endanger the safety of the other system was not raised by the pleadings, the decree would not preclude the determination of the question in a subsequent suit.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1264, 1265; Dec. Dig. § 736.*]

4. APPEAL AND ERROR (§ 1040*) — REVIEW — HARMLESS ERROR—PLEADING.

Any error in sustaining an exception to a paragraph of an answer in an action to enjoin the use of certain water rights, to the effect that a former judgment in a federal court was res judicata, was harmless, where the judgment in the state court did not conflict with the federal decree.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

5. APPEAL AND ERROR (§ 1149*)—DETERMINATION AND DISPOSITION—REVERSAL.

Error in a decree which can be corrected by reforming it on appeal will not require a reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4483–4496; Dec. Dig. § 1149.*]

6. APPEAL AND ERROR (§ 759*)—REVIEW—ASSIGNMENT OF ERROR—FUNDAMENTAL ERROR.

Where the judgment in a proceeding to determine water rights was so indefinite as to be incapable of intelligent enforcement, the error was fundamental and may be corrected on appeal, though the assignments of error addressed thereto could not be considered because not correctly copied in the brief.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3094; Dec. Dig. § 759.*]

7. APPEAL AND ERROR (§ 759*)—QUESTIONS REVIEWABLE — NECESSITY OF ASSIGNMENT OF ERROR—REVERSAL ON OTHER GROUNDS.

The court on appeal from a decree settling water rights may consider the indefiniteness of the judgment, even though the assignments of error addressed thereto could not be considered because incorrectly copied in the brief, where the cause would be reversed for other reasons.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3094; Dec. Dig. § 759.*]

8. WATERS AND WATER COURSES (§ 143*)—APPROPRIATION — PRIORITIES — RIGHT OF SECOND APPROPRIATOR.

A second appropriator of water is entitled, as against a first appropriator, to any water not used or needed by the latter, and may not be deprived of such right by injunction.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 152; Dec. Dig. § 143.*]

9. WATERS AND WATER COURSES (§ 85*)—RIPARIAN RIGHTS — DIVERSION — RESTORATION OF WATER DIVERTED.

An upper riparian owner cannot be enjoined by a lower owner from diverting water until the former shall construct an intake, headgate, canals and ditches, and a return ditch for surplus water, so that the diversion may be made without unnecessary waste, where by agreement with such lower owner the surplus water of the upper owner was turned into the lower owner's canal, as the rule requiring the return is for the benefit of and may be waived by the lower owner.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 84–88; Dec. Dig. § 85.*]

10. JUDGMENT (§ 732*)—RES JUDICATA.

And evidence of such an agreement was not inadmissible as varying a former decree fixing the water rights of the parties, pleaded as res judicata, where such decree did not purport to settle that phase of the controversy.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1260, 1261; Dec. Dig. § 732.*]

11. WATERS AND WATER COURSES (§§ 140, 42*)—RIPARIAN RIGHTS.

Riparian lands, without reference to location on the stream or to any statutory appropriation, have equal rights to a reasonable use of the water, but nonriparian lands acquire rights to water by statutory appropriation alone, and the first appropriator in time is first in right.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 33, 34; Dec. Dig. §§ 140, 42.*]

12. PARTIES (§§ 18, 80*)—"NECESSARY PARTIES"—"PROPER PARTIES."

"Necessary parties" to a suit are parties who are so vitally interested in the subject-matter that a valid decree could not be rendered without their presence, whether there was an objection to a failure to make them parties or not; but where they are only "proper parties," the right to complain that they were not made parties may be waived by delay.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 18, 24, 26, 123–131, 170; Dec. Dig. §§ 18, 80.*

For other definitions, see Words and Phrases, vol. 5, pp. 4720, 4721; vol. 6, p. 5692; vol. 8, p. 7767.]

13. WATERS AND WATER COURSES (§ 152*)—APPROPRIATIONS — ACTIONS TO DETERMINE RIGHT—PARTIES.

Consumers of water taken by statutory appropriation from a public stream, who obtained their rights by contract from the appropriating company, have no direct right in the water which makes them necessary parties to an action against the company for an infringement of the right of appropriation of another appropriator, and a right to have them made parties was waived by a failure to object.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 156, 157; Dec. Dig. § 152.*]

14. WATERS AND WATER COURSES (§ 152*)—INFRINGEMENT OF APPROPRIATIONS — ACTIONS—PARTIES.

Customers of a company having a right to appropriate water which has been infringed may be properly made parties to an action against the infringer by allegation and proof that the appropriator had refused to protect its appropriation to their injury.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 156, 157; Dec. Dig. § 152.*]

15. WATERS AND WATER COURSES (§ 152*)—INFRINGEMENT OF APPROPRIATIONS — ACTIONS—PARTIES.

A trustee for the bondholders of a company having a right to appropriate water was a proper but not a necessary party to an action for an infringement of the right of appropriation, and a right to have him made a party was waived by a failure to object to his absence.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 156, 157; Dec. Dig. § 152.*]

16. WATERS AND WATER COURSES (§ 152*)—INFRINGEMENT OF WATER RIGHTS—ACTION—PARTIES.

Where, in an action between water appropriators, the relative rights to and the amount of water which each was appropriating were in issue, another water company, through whose ditches defendant claimed that

the adverse party was diverting water, was a necessary party to the suit.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 156, 157; Dec. Dig. § 152.*]

17. WATERS AND WATER COURSES (§ 152*)— INFRINGEMENT OF WATER RIGHTS — EVIDENCE.

In an action to enjoin an infringement of a right to appropriate water, in which the amount of water taken by each appropriator was in issue, measurements of the headworks and spillway of the company, claimed to be making a wrongful appropriation, were properly admitted in evidence, though taken long after the case went to trial.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent Dig. §§ 156, 157; Dec. Dig. § 152.*]

18. WITNESSES (§ 260*) — EXAMINATION OF WITNESSES—CHARACTER OF ANSWER.

In an action to enjoin an alleged infringement of water rights, a witness, who answered a question, which was capable of being understood in different ways, without understanding the intent of his questioner, was properly permitted to explain the answer given.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 897, 898; Dec. Dig. § 260.*]

19. APPEAL AND ERROR (§ 692*)—BILL OF EXCEPTIONS—SUFFICIENCY.

A court on appeal will not consider assignments of error to the admission of testimony, where the bills of exceptions did not show what the answers would have been.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2905–2909; Dec. Dig. § 692.*]

Appeal from District Court, Ward County; S. J. Isaacs, Judge.

Injunction by John Miller and others against S. V. Biggs and others. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

W. W. Hubbard, of Pecos, and Monroe & Roark, of Topeka, Kan., for appellants. J. E. Starley, of Barstow, and McKenzie & Brady an'd Hudson & Canon, all of Pecos, for appellees.

PETICOLAS, C. J. This was a suit for an injunction brought by Miller and others, users of water from the Pecos river through an irrigation system called the "Barstow System," against Biggs and others, appellants, to restrain a diversion of water from said stream through an irrigation system called the "Biggs System," and was submitted on special issues, following which judgment was rendered in favor of the appellees, as will be more fully adverted to. Both systems or companies owned riparian and nonriparian lands, and both were engaged in furnishing water for irrigation purposes to their patrons, owners, or lessees of land situated on the ditches which composed the respective systems. The Barstow System takes water under an appropriation prior in time to that of the Biggs System.

The case has been briefed by appellants in such manner as to greatly increase the labors of this court, and in many instances in direct violation of the rules of court. There is hardly a statement under any assignment or proposition in appellants' brief that consists of more than simply the conclusions of counsel, without any reference in exact language to the contents of the record, and in many instances without even a reference to the record. Some of the assignments are not literally copied in the brief. In many instances two assignments are combined and made one. Words are frequently eliminated, and perhaps the meaning changed. There is hardly one statement in the brief that does not require the court to turn to the record to ascertain what the facts are. We have been very much inclined to dispose of the entire case simply on the rules, without reference to the merits at all; but, in view of the interests involved, we have deemed it our duty in some of the less flagrant instances to indicate what our opinion is as to the law.

[1] Of assignments 1 to 10, the eighth and tenth are not correctly copied. Our rules provide that assignments of error must be copied into the brief, and this, of course, necessarily implies that they shall be correctly copied. For the reason stated, the said assignments will not be considered. The other assignments from 1 to 10, and the propositions under them, raise the question of the effect of a certain decree entered in the federal court. This decree, it appears, was rendered in a suit between W. P. Clarkson, who appears to have been the trustee in the instruments securing certain bondholders of the Barstow Irrigation Company. The material portions of it are as follows: "That W. P. Clarkson, trustee, by virtue of the original water appropriation of the Ward County Irrigation Company, be and he is entitled to and is hereby decreed to have the right to the prior use of the water of the Pecos river for irrigation purposes as against the rights of water appropriation * * * asserted by S. V. Biggs et al. at the time of institution of this suit. That water appropriation called Biggs Canal, recorded volume 2, page 389, * * * and water appropriation called Biggs Canal Reservoir System filed for record January 17, 1907, * * * be and they are each sustained and confirmed unto S. V. Biggs and he is quieted in his title thereto, holding and retaining the right to use the storm, flood, and ordinary and natural flow of the waters of Pecos river for irrigation purposes throughout his reservoir and canal system, * * * provided that the use of said water so reserved unto him shall not conflict with the right of plaintiff under this decree and the terms of plaintiff's water appropriation. S. V. Biggs shall have * * * the right to his equitable proportion of the natural and ordinary flow of the water * * * for the purpose of irrigating such riparian sections or portions of riparian sections as

may be served by his said system, * * * being sections 52, 53, 54, 55, 56, 57, 58, 59, in block 33. The right of ownership in the plaintiff to water rights of riparian school lands on the Pecos above the headgate of plaintiff's system is not intended to be hereby waived. * * * The plaintiff, except as above stated, * * * is hereby decreed the prior right to the use of the waters of the Pecos river *necessary for irrigation purposes upon the riparian and nonriparian lands covered by plaintiff's said Barstow* System and entitled to be irrigated thereby, and that the use by said Biggs of such of said waters for irrigating nonriparian lands shall be subject to plaintiff's said prior right."

[2, 3] First, it was in substance pleaded in the answer of the appellants that the plaintiffs and the Barstow Company were privies to said decree; that it was intended to be a test case, decisive of the rights of the owners of each irrigation system; that the consumers under the Barstow System, including the plaintiffs, acquiesced in the pendency and determination of the cause in the federal court, and accepted its benefits. It also appears from the record herein that the appellees first pleaded said decree as an agreement, and afterwards pleaded it in full as being an adjudication that their rights were prior to those of appellants. Under these circumstances, we do not question that the federal court decree is res adjudicata of the matters therein determined, or which were fairly within the scope of the pleadings. Two things, however, are apparent: First, that, conceding said decree to be res adjudicata, it would not follow, as contended by appellants, that this suit must abate; for, even though the federal decree is res adjudicata, it would not deprive the state court of the power to entertain jurisdiction for the purpose of enforcement of the provisions of the federal decree. Nor is it res adjudicata upon the question of whether or not the location and original construction of the headworks of the Biggs System were such as to endanger the safety of the Barstow System; for, although that question might have been litigated in the case decided in the federal court, it is apparent that it was not litigated, not within the scope of the pleadings, nor in any way germane to the decision of the federal court. Our understanding is that a judgment is only determinative of the issues raised by the pleadings, or which were fairly within the scope of the pleadings. Philipowski v. Spencer, 63 Tex. 604; Teal v. Terrell, 48 Tex. 491; Pishaway v. Runnels, 71 Tex. 352, 9 S. W. 260; James v. James, 81 Tex. 373, 16 S. W. 1087.

[4] Appellants' first assignment of error complains that the court erred in sustaining plaintiffs' special exception to paragraph 6 of the trial answer, which was the section of their answer pleading said judgment as res adjudicata and alleging that plaintiffs were privy thereto. It is apparent that this was technical error; but as it is also apparent that the only effect of the federal court decree was that the state court must use it as a basis for its judgment, in so far as it determined the priority of the rights to water between the Barstow and the Biggs people, the error was harmless, unless the judgment herein rendered in effect conflicts with and is antagonistic to the federal court decree.

The decree in the trial court substantially decreed that Barstow Company and plaintiffs have the right to the prior use of the water to the extent of the appropriation as against the rights by appropriation of the defendants; and decreed to Barstow Company the prior right to the water upon riparian and nonriparian lands covered by Barstow System, subject only to use by the defendant Biggs et al. of water on riparian lands, as hereinafter decreed. Use for nonriparian lands by Biggs et al. shall be subject to Barstow prior right.

Defendant Biggs et al. are given their equitable portion of the natural and ordinary flow of Pecos river for irrigating riparian sections, such riparian sections and parts of riparian sections being as follows: 52, 53, $7/16$ of 54, 55, 56, 57, 58, 59, in 33—but shall take water only to such parts of said lands as shall be in actual cultivation or being prepared for actual cultivation.

Defendants (except Barstow Company) are perpetually enjoined from further diverting waters above the dam and intake of Barstow Company, except as at such times as there is flowing down said river a volume greater in amount than *can be handled by* the said Barstow Irrigation Company through their intake, flume, and canals, provided said amount shall not exceed the amount of the appropriation of the Barstow Company.

[5] Defendants (except Barstow Company) are enjoined from diverting waters to riparian or nonriparian lands until defendants construct an intake, headgate, canals, and ditches in which to divert said water in such manner as to prevent unnecessary and unreasonable waste, and have constructed a ditch through which all surplus water may be conducted back to the river from whence it came, or into some natural channel reaching the river. From which it will be seen that the differences, in effect, between the decrees are as follows: (a) The federal court decree adjudicated all of section 54 to be riparian; the state court adjudicated only $7/16$ of 54 to be riparian. This difference is predicated as error by assignment No. 10, which we have declined to consider as it is not a copy; but this difference makes the error above indicated in assignment No. 1 material. As, however, it can be controlled by reforming the judgment so as to adjudicate all of 54 to be riparian, the case will not be reversed for that reason. (b) The trial court enjoined the Biggs people from

diverting water except at such times as there was flowing down the river a volume greater in amount *than can be handled by the said Barstow Irrigation Company from their intake, flumes, and canals, provided said amount shall not exceed the amount of the appropriation of the Barstow Company.* It will be noted that the decree as against the Biggs use on riparian lands is "that they may only use it on cultivated lands," while the decree in favor of the Barstow use on nonriparian and riparian lands is "all their canal can handle."

[6, 7] We are clearly of the opinion that the test provided in the decree that the Barstow Company may use all its canal can handle is unreasonable, uncertain, and leaves its decree so indefinite as not to be capable of intelligent enforcement. Appellants complicate the question, as usual in this case, by the fact that the assignments addressed to the form of this judgment are not correctly copied in the brief, and therefore cannot be considered. We believe, however, that a judgment so indefinite as to be incapable of enforcement is a fundamental matter, which could be corrected without assignment; and in any event, as the case will be reversed for other reasons, it is not improper to consider it.

[8] The jury in this case found that one cubic foot per second would irrigate 100 acres of land. Under this finding, the most water that could have been necessary for the Barstow Company at any time was 120 feet, while the testimony most favorable to that company tends to show a flow in the Pecos of from 120 to 140 feet. It is apparent that although the Barstow Company, being the first appropriator, was entitled to the first water, the Biggs Company had by its appropriation the right to any water not used or needed by the Barstow Company.

It is also the law that, no matter how much water the Barstow Company might be entitled to under its appropriation, it could not in equity be allowed by injunction to deprive the Biggs Company of water which it (the Barstow Company) does not use or need on the lands now in cultivation served by its system.

The question whether it could now, many years after its appropriation, acquire the right to more water than it is now using, by the cultivation of additional acreage, we need not now decide. It is sufficient to say that on a retrial the court should ascertain what the flow of the Pecos is, what amount of water the Barstow Company is entitled to, in definite measurement, and, in definite and certain terms, expressed either by measurements or by a division of time, adjudicate the Barstow Company's right thereto, so framing the judgment as to leave the balance of the water, if any, for the other appropriator, and, if necessary, so framing it as not to conclude the future determination of whatever additional cultivation by Barstow Company would give it the right to more water.

[9, 10] The appellants are also enjoined from diverting waters to sections riparian or nonriparian until they shall construct intake, headgate, canals, and ditches in which to divert said water in such manner as to prevent unnecessary and unreasonable waste, and until they have constructed a ditch through which all surplus water may be conducted back to the river from whence it came. The jury, in answering one of the special issues, said that the Biggs intake was not so constructed as to prevent unnecessary waste, and that it has no canal back to the river. These being the facts, the judgment of the court as to this matter was correct; but the twenty-eighth assignment of error complains that the court refused to admit the testimony of S. V. Biggs that he had entered into an agreement with the Barstow Company that he might return this water into the Barstow Company's canal instead of the river. It is contended that this testimony was not admissible because it varied the Clarkson judgment. The Clarkson judgment did not purport to touch upon this phase of the matter any more than it did upon the character of Biggs' headgate, nor did the written stipulation dismissing one of the other cases. It was a separate and complete agreement, admissible in evidence, and if supported by the facts, would prevent the court, in a suit brought by the Barstow Company, from mandatorily requiring the defendants to do something which the plaintiffs had agreed they need not do.

[11] We understand the law to be in this state that riparian lands, without reference to location, up or down the stream, and without reference to any statutory appropriation, have equal rights to a reasonable use of the water; that nonriparian lands acquire rights to water by statutory appropriation; and that as between appropriators the first in time is first in right, and the federal court decree in the Clarkson case was but declaratory of this rule of law. An ingredient portion of these rights, however, is that the owner whose land is first reached by the water, after using his reasonable proportion thereof, must return the balance to the source from whence it came; but this rule is for the benefit of the owner below, and if he agree that it need not be done, or to return it not to the river but to his canal, certainly a court of equity should not in his suit command its return to the river.

[12] The eleventh to fifteenth assignments of error present the question of who are proper and necessary parties, which may be summarized as follows: (a) That the plaintiffs could not sue, because the Barstow Irrigation Company stood in relation of trustee

towards its patrons, and it instead of them is the proper party to maintain the action; (b) that other consumers than plaintiffs under the Barstow System were necessary parties; (c) that Clarkson, who was the trustee for the Barstow bondholders, was a necessary party; (d) that the Farmers' Independent Canal Company, above the Barstow and Biggs Systems on the Pecos river, were continually diverting the waters of the Pecos river, and they were necessary parties; (e) that Runciman, Pope, Selinger, and others were patrons of the Biggs irrigation system prior to the commencement of this action, that they had water right contracts for the irrigation of such land by said system, and that they were necessary parties. Appellants have seemed unable to determine in their own minds what the true rule was as to who were necessary parties, so they throw the suggestion at this court that everybody is a necessary party, and leave us to determine what the true rule is. In one breath they say that the Barstow Irrigation Company is the proper plaintiff, and next contend that the Barstow Irrigation Company's consumers are the proper plaintiffs and that the Biggs Company consumers are the proper defendants. This method of presenting these matters is, of course, strictly within the rights of counsel; but it has necessitated the investigation by this court of the entire field. Appellants pleaded in the second amended answer, which is the first of the defendants' pleadings appearing in the record, that Rairden, Neal, and Armstrong were jointly interested with Biggs in the ownership of the Biggs System; but there was no plea or suggestion at that time that Runciman, Selinger, and Pope, the water consumers, were necessary or proper parties, and not until the filing of the third amended answer was it suggested that these consumers were necessary and proper parties. If, therefore, they were "proper parties" as distinguished from "necessary parties," and unless their presence was indispensable, appellants have by delay waived their rights to have them made parties. The same thing is true with reference to their contention that Clarkson, trustee, was a proper and necessary party. If he is only a proper party, they have waived their right to make him a party. The words "necessary" and "proper" parties are often loosely used in the decisions, and it becomes therefore very difficult to determine who are necessary parties and who are only proper parties. It is apparent, however, that necessary parties, in the strict sense of that word, are indispensable parties—parties so vitally interested in the subject-matter of the suit as that a final decree cannot be rendered without their presence. If there are any such who have not been joined in this action, the case would have to be reversed without reference to whether or not appel-

lants have properly asked that they be made parties or not. King v. Commissioners, 10 Tex. Civ. App. 114, 30 S. W. 257; Bates v. Van Pelt, 1 Tex. Civ. App. 135, 20 S. W. 949. Beach on Modern Equity Practice, par. 78, says: "If a suitable decree cannot be entered for want of an indispensable party, the court may, at the hearing, take notice of the fact, direct the cause to stand over, or dismiss the case without prejudice." In paragraph 55 it is said: "Indispensable parties are those who not only have an interest in the subject-matter of the controversy, but an interest of such a nature as that a final decree cannot be made without affecting their interests."

[13] It will be noted that the object and purpose of this litigation is to establish, decree, and fix the relative and proportionate rights of water as between the water appropriation belonging to the Barstow Company and the water appropriation belonging to the Biggs Company. By our statutes, the waters of such rivers as the Pecos are the property of the public. Riparian owners have easements therein, which cannot be divested, save, perhaps, by condemnation. But statutory appropriations, when filed in compliance with law, give to such appropriators the right to take the water to nonriparian lands, there to use it for themselves or to dispose of it to water consumers. As stated, therefore, the purpose of this case is to determine the relative rights between these appropriations, but not necessarily to determine the relative rights between the Barstow consumers and the Biggs consumers. For failure to supply water, the right of action of the Barstow consumers is, primarily, at least, against the Barstow Company, and the right of the Biggs consumers is likewise against the Biggs Company. The consumers of neither company have any direct right in the waters; their rights are by contract from the respective companies, who are the proprietors of the waters and who have the only specific right in the waters.

In the case of Biggs v. Lee, 137 S. W. 138, in a litigation affecting this same system, Biggs was sued alone and pleaded that other parties, Rairden, Neal, and Armstrong, were jointly interested with him in the water appropriation. It was held reversible error not to make them parties. In Barstow v. Cleghon, 93 S. W. 1024, suit was by one who had a contract for water with the Barstow Company against it for damages. The Barstow Company pleaded that the plaintiff's tenants were necessary parties. Judge Speer, who wrote the opinion also in Biggs v. Lee, supra, held that all persons jointly interested in the subject-matter of the suit are necessary parties, but that the plaintiff's tenants were not so jointly interested in the water contract between plain-

tiff and the Barstow Company; they not being privy to that contract.

In Farmers' Ditch Co. v. Irrigation District, 14 Idaho, 450, 94 Pac. 761, it is said: "The appropriation of the waters carried in the ditch, operated for sale, rental, and distribution, does not belong to the water user, but rather to the ditch company; any controversy he may have is with the ditch company from which he receives water. His presence in the action is in no respect essential to the adjudication of the rights of the several proprietors."

It follows, we think, from what has been said, that the Barstow consumers have no right of action against the Biggs appropriation. The Biggs consumers are not necessary parties defendant in a suit involving the relative rights of the Biggs and Barstow appropriations.

[14] It is doubtless true that the Biggs consumers were proper parties, but appellants have not themselves made them parties, and by delay had waived their right to make them parties. It is doubtless also true that the Barstow consumers, upon proper allegation and proof that the Barstow Company had refused to protect its water appropriation, thereby injuring them, might be proper plaintiffs. In the absence, however, of such allegation, the Barstow consumers could not maintain the action. We conclude therefore that the court erred in striking out appellants' plea to the effect, substantially, that the Barstow consumers had no right of action against it. But the court did not err in striking out appellants' plea that the Biggs consumers were necessary parties.

[15] We think, also, that Clarkson, trustee for the bondholders of the Barstow Company, was a proper party, but not a necessary party. Appellants' position is that this case might be adjudicated and a judgment rendered, and afterwards Clarkson might come in, having foreclosed his bonds, and become the owner of the property, and bring another suit against them, the answer to which suggestion is that appellants should have made Clarkson a party if they desired to forestall any such happening. Testing the matter also by the rules laid down by Mr. Beach, it seems to us that, in a suit involving the relative rights of the Biggs and Barstow water appropriations, a final decree could be made with only those parties before the court.

[16] As an original proposition, the Farmers' Independent Canal Company above the Barstow and Biggs Systems on the Pecos river is not a necessary party; but this issue is complicated by the fact that it was alleged by appellants in their plea, with reference to this company being a necessary and proper party, that the Barstow Company was taking water out of the Pecos river through the Farmers' Independent Canal Company's canals, carrying it themselves to the Barstow System, and there using it. We think these facts made the Farmers' Independent Canal Company a necessary party. The relative rights to water between the Barstow Company and the Biggs Company being at issue, it became material to ascertain how much water each was getting and how much water each needed. If it should appear, as indicated by said plea, that a portion of the water used by the Barstow Company came from up the river and was by the Farmers' Independent Canal Company allowed to come through its canals, we fail to see how either a complete or accurate decree could be rendered, especially with reference to the quantity of water used by the Barstow Company, without taking into consideration the portion of the water which it so acquired; and it follows that in order to control that water, and decree with reference to it, the Farmers' Independent Canal Company was a necessary party.

[17] The thirty-ninth assignment of error complains of the action of the court in excluding the testimony of the witness M. L. Swinehart relative to certain measurements taken on the previous day of the headworks and spillway of the Biggs System. It is clear that this testimony was material. It was excluded by the court on objection by appellees' attorney that the measurements were taken long after the case went to trial. This objection was not well taken. The testimony was admissible as against the objection urged.

The forty-fifth assignment of error complains of the court's refusal to permit appellants to show that the Barstow Company had been diverting water from the Pecos river above the Biggs dam through the Farmers' Independent Canal Company and carrying it around and using it in their system. This was clearly material testimony, as has been indicated by what has been said with reference to the Farmers' Independent Canal Company being a necessary party.

[18] The forty-sixth assignment of error complains of the court's refusal to allow the witness Swinehart to explain or correct a statement made by him. The question asked was: "I will ask you whether or not, as the result of all your observations of the Barstow System, you formed an opinion as to whether or not it is being conducted in an economical manner." To this the witness answered, "No." It being suggested that his answer may have referred to the question whether it was conducted in an economical manner, the following colloquy occurred between the court and the witness: "The Court: You were asked to state whether or not you could state whether the Barstow Irrigation Company was being operated economically—was an economical system. You answered that you could not? A. No, that was not my intention; I thought I was ask-

ed the question whether or not it was being operated on which I would consider an economical basis, and I answered, 'No.' The Court: Is that what you meant? A. Yes. The Court: The objection will be sustained, because it is not in rebuttal"—and thereupon instructed the jury not to consider it. Without indicating any opinion as to whether or not it was material to ascertain that the system was conducted in an economical manner, it is apparent that the witness had the right to explain his testimony.

[19] There are a great many other assignments in this case; but we do not feel called upon to discuss them further than we have done. Some of them are not correctly copied; others complain of the refusal of the court to permit various witnesses to testify to certain facts, and the bills of exceptions do not show what the answers would have been. What has been said, we think, indicates as fully as is necessary the vital issues in the case, so that upon a retrial of the case the trial may be correctly conducted.

For the errors herein indicated, the case is reversed and remanded.

McKENZIE, J., disqualified.