PHILLIPS v. NEWSOME. (No. 8281.)

(Court of Civil Appeals of Texas. Ft. Worth. June 26, 1915.)

1. FIXTURES ☞21—STATIONARY ENGINE.

Where defendant bought real estate on which was a cotton gin, and at the time of such purchase there was in the building a stationary engine bolted to a concrete bed five feet deep, which had been prepared for that purpose, the shaft from the engine being attached to the building, the engine was a fixture, title to which passed to defendant with the land.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 47–56; Dec. Dig. ☞21.

For other definitions, see Words and Phrases, First and Second Series, Fixture.]

2. FIXTURES ☞21—BONA FIDE PURCHASER—CHATTEL MORTGAGE—RECORD NOT BINDING.

Defendant, having purchased land without knowledge of a recorded chattel mortgage on an engine, permanently attached to the ground, held by the seller of the engine to defendant's grantor, took clear title to the engine upon purchasing the real estate without searching the chattel mortgage records, since it is the policy of the law that title to real estate shall appear upon the records designated for that purpose.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 47–56; Dec. Dig. ☞21.]

3. FIXTURES ☞27—CONTRACT AGAINST FIXATION—VALIDITY.

The mortgagor and mortgagee of personal property can, as between themselves, validly contract that such property shall not become a fixture on its attachment to real estate.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 5, 22, 25, 44, 45, 54; Dec. Dig. ☞27.]

Appeal from District Court, Bosque County.

Action by D. F. Phillips against J. L. Newsome. Judgment for defendant, and plaintiff appeals. Affirmed.

Carlock & Carlock, of Ft. Worth, for appellant. H. E. Trippet, of Hico, for appellee.

CONNER, C. J. This is an appeal from a judgment perpetuating a temporary writ of injunction issued out of the district court of Bosque county to restrain the sale of a certain stationary steam engine, alleged to constitute a part of the permanent fixtures of certain gin property and lots owned by the appellee, Newsome. The levy and threatened sale was by the appellant, Phillips, as constable of precinct No. 2 of Bosque county, by virtue of an order of sale issued out of a justice court in favor of the Southern Trading Company and against the Eubanks & Henry Gin Company, the order having been issued in accordance with the terms of a judgment foreclosing a chattel mortgage upon the engine mentioned.

There is but little, if any, conflict in the material facts. In substance, they are that in August, 1911, the Southern Trading Com-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pany of Texas sold the engine in question to the Eubanks & Henry Gin Company, the latter company at the time executing a chattel mortgage upon the engine to secure the payment of part of the purchase money. The mortgage, among other things, contained a recital that the engine—

"shall not become a fixture attached to any realty but shall remain as personal property, the title to remain in the Southern Trading Company of Texas until fully settled for as herein provided."

The mortgage was seasonably and duly recorded in the chattel mortgage record of Bosque county, to which the Eubanks & Henry Gin Company took the engine and used it in the construction and operation of a cotton gin on lots 1, 3, 4, 5, 6, 8, 9, 11, 12, 13, and 14, in block 5, in the town of Iredell. Later, to wit, in 1912, the Eubanks & Henry Gin Company not having paid their mortgage debt at its maturity, the Southern Trading Company of Texas instituted its suit against the gin company in the justice court of precinct No. 2 of Bosque county, and prosecuted it to a judgment in their favor, foreclosing the mortgage before mentioned; and, as stated, it is by virtue of this judgment that the enjoined order of sale was issued. In August, 1912, however, prior to the entry of the judgment above mentioned in favor of the Southern Trading Company, the appellee, J. L. Newsome, purchased the lots and gin property before mentioned, paying a valuable consideration, and received a warranty deed. At the time of this purchase he was without any actual notice of the claim of the Southern Trading Company, or of its chattel mortgage.

[1] In reviewing the proceedings below we are called upon, by the assignments of error, to determine whether the engine at the time of appellee's purchase of the gin was personal property, as appellant contends, or whether it constituted a part of the realty, as appellee insists, and this question depends upon the further question of whether, at the time of appellee's purchase, the engine had become so attached to the real property as to become a fixture thereon. The evidence may be said to be conflicting upon this point, but, tested by the ordinary rules, we can but think that the evidence fully sustains the trial court's holding, to the effect that the engine had become a fixture and constituted a part of the real property upon which it was situated. The appellee testified that the engine upon which the levy had been made was a part of the gin machinery at the time he bought the gin; that it was pointed out to him as a part of the gin and connected therewith at the time; that it was bolted to the floor, that is, bolted to the concrete foundation; that if the engine was taken out of the gin, it would destroy the usefulness of the gin; that a concrete foundation, thought to be five or six feet in the ground, had been prepared for the bed of the engine, and that the engine is fastened to the concrete foundation by bolts; that the shaft that runs from the engine is fastened to the house. The evidence as a whole undoubtedly tends strongly to show that the engine was originally attached to the other gin property with a view of its permanent location, and, unless it must be otherwise held because of the record of the chattel mortgage in favor of the Southern Trading Company, there can be no question but what the engine in controversy became a permanent fixture upon the lots upon which the gin property was located so that the title and possession of the same passed to the appellee with the deed that he received therefor. See Tiedeman on Real Property (3d Ed.) § 13; Jones on Chat. Mortgages (5th Ed.) § 128; Brown v. Roland, 11 Tex. Civ. App. 648, 33 S. W. 275; Jones v. Bull, 85 Tex. 136, 19 S. W. 1031; Watson v. Markham, 33 Tex. Civ. App. 476, 77 S. W. 660; Sinker v. Comparet, 62 Tex. 476; Cole v. Roach, 37 Tex. 419; McJunkin v. Dupree, 44 Tex. 501.

[2, 3] We also think that the court below properly concluded that appellee was not affected by the terms of the mortgage under which the Southern Trading Company claimed, or of its record. While as between the parties to the mortgage it is undoubtedly true that the character of the property may be fixed by a contract, that is, the purchaser may estop himself from claiming the property as a part of the realty by reason of a subsequent attachment thereof to the soil, but appellee was not a party to the mortgage contract under consideration. He was not affected by the provision that the engine should not become a part of the realty, and was without knowledge of it. As against the mortgagor, appellee was a purchaser in good faith and without notice and had the right to view the property in accord with its apparent condition and character at the time of his purchase. Among other things, after a review of the authorities, it is said in the case of Ice, Light & Water Co. v. Lone Star Engine & Boiler Works, 15 Tex. Civ. App. 694, 41 S. W. 835:

"The better opinion is that a purchaser of the realty is bound only to take notice of the record title of the realty, and is not in any way bound to examine the records for chattel mortgages, for he is not affected by the record of the chattel mortgage upon fixtures on such realty."

The case of Tibbetts v. Horne, 65 N. H. 242, 23 Atl. 145, 15 L. R. A. 56, 23 Am. St. Rep. 31, is a case quite similar to the one now under consideration, and it is there said:

"There is no principle of public policy to be subserved by fostering the claim of one man to the enjoyment and exercise of a right and interest in and over the real estate of another, at variance with the record title and apparent ownership. But, on the other hand, the policy of the law of this state is that the public records * * * should show the true state of the titles. * * * Whatever may be the rights or the nature of the interest in respect to such property * * * as between the original parties to the contract, * * * it seems to be well settled

that a building, erected as the one in question was, could become a fixture, and a part of the freehold, so as to pass by the deed of the owner of the land to a bona fide purchaser without notice."

In this state, as in other jurisdictions, the policy of our law is that the title to real estate shall appear upon the records designated for that purpose, so that all may know in whom the legal title is vested, and appellee, having purchased in good faith and without actual notice of the trading company's mortgage or claim, was not bound to search the chattel mortgage records. He, therefore, took the engine in controversy free from the claim now asserted against him. See, in addition to the cases cited, Jones on Chattel Mortgages (5th Ed.) § 127; Ginners Mut., etc., v. Wiley, 147 S. W. 632; Taylor v. Lee, 139 S. W. 910; Hopwell Mills v. Savings Bank, 150 Mass. 519, 23 N. E. 327, 6 L. R. A. 249, 15 Am. St. Rep. 235; Binkley v. Forkner, 117 Ind. 176, 19 N. E. 753, 3 L. R. A. 33.

We conclude that all assignments of error must be overruled, and the judgment affirmed.